*337
 
 OPINION OF THE COURT
 

 Ciparick, J.
 

 At issue on this appeal is whether a corporation that is related to, but not itself, a party to an agreement containing an arbitration clause can be compelled to arbitrate a dispute arising from an alleged breach of that agreement. We conclude that, absent a showing of abuse of the corporate form, the non-signatory corporation cannot be compelled to arbitrate.
 

 L
 

 Plaintiffs-respondents, TNS Holdings, Inc. and two of its officers and major shareholders, Richard Zachar and George Bloukos, have brought this action against MAI and two of its subsidiaries, MKI and Batchnotice, claiming breach of several agreements. During 1992 and 1993, plaintiffs had been in negotiations with MKI, a company engaged in bond trading, to sell TNS’ primary asset — a software system for on-line bond trading called “TradeNET.” Three main written agreements were executed: those for Hardware Purchase and Software Licensing were between MKI and TNS and the third, a Software Purchase Agreement, was between TNS and Batch-notice, who would take title to the software for internal tax purposes. The third agreement contained the arbitration clause at the center of this dispute. Although plaintiffs say they learned that Batchnotice would be the signatory only 24 hours before signing, they acknowledge that the main provisions of the Software Purchase Agreement were worked out in prior meetings with MKI, including a “sustained discussion” on whether to require arbitration as a means of dispute resolution, which MKI and TNS eventually agreed to make a part of their Software Purchase Agreement.
 

 Claiming that they were in a fragile economic situation and that MKI offered the agreement to TNS on a “take it or leave it” basis, TNS signed the Software Purchase Agreement with
 
 *338
 
 Batchnotice. Because Batchnotice had no assets other than the software to be purchased from TNS, a letter from the parent MAI, dated September 2, 1993, ensured that it would cover any failure to perform under the agreement. Plaintiffs claim that the written agreements were accompanied by an oral agreement from MKI’s President to employ several key TNS employees, including Zachar and Bloukos, for the five-year duration of the Software Purchase Agreement.
 

 The current action was precipitated by MKI’s firing of Zachar and Bloukos. Plaintiffs claimed a breach of the alleged oral employment agreement that accompanied the written agreements and sued defendants for rescission and damages for breach of contract. Defendants moved to stay the action and for an order compelling plaintiffs to arbitrate this dispute with “Batchnotice, Limited,” as provided by the Software Purchase Agreement.
 

 The IAS Court found that “plaintiffs’ claims center on the provisions of the Software Purchase Agreement * * * and thus fall within the scope of the arbitration clause.” The decretal paragraph ordered
 
 “the parties
 
 * * * to proceed promptly to arbitration as to the claims raised in this complaint” (emphasis added). Eighteen months later, plaintiffs sought arbitration as to all defendants. Defendants moved by order to show cause to stay the arbitration as against MAI and MKI on grounds that they were not parties to the arbitration agreement. Supreme Court denied the motion, stating that the court had previously “ordered arbitration for
 
 all
 
 parties involved” (emphasis added).
 

 A divided Appellate Division modified by staying arbitration as to MAI. The majority determined that MKI was the “alter ego” of Batchnotice, and as such could be compelled to arbitrate, but that there was no evidence that MAI had acted as the “alter ego” of Batchnotice. The majority further held that as to MKI, there were issues in the underlying dispute involving MKI and arising from other related agreements that were so “inextricably interwoven” and so closely related as to compel MKI’s participation in the arbitration (243 AD2d 297, 301). The dissent concluded that plaintiffs had failed to meet their heavy burden of proving their “alter ego” theory and that only Batchnotice, the actual signatory to the agreement, was required to arbitrate a dispute regarding its terms. The Appellate Division granted defendants leave to appeal to this Court, and we now reverse.
 

 
 *339
 
 IL
 

 Although arbitration is favored as a matter of public policy
 
 (see, Matter of Smith Barney Shearson v Sacharow,
 
 91 NY2d 39, 49), equally important is the policy that seeks to avoid the unintentional waiver of the benefits and safeguards which a court of law may provide in resolving disputes. Indeed, unless the parties have subscribed to an arbitration agreement it would be “unfair to infer such a significant waiver on the basis of anything less than a clear indication of intent”
 
 (Matter of Marlene Indus. Corp. [Carnac Textiles],
 
 45 NY2d 327, 333-334). While CPLR 7501 requires that an agreement to arbitrate be in writing, this Court has recognized in certain limited circumstances the need to impute the intent to arbitrate to a non-signatory
 
 (see, e.g., Crawford v Merrill Lynch, Pierce, Fenner & Smith,
 
 35 NY2d 291;
 
 Hendler & Murray v Lambert,
 
 67 NY2d 831).
 

 Other courts have created an “alter ego” exception, compelling the “alter egos” of a signatory to arbitrate
 
 (see, e.g., Pile Found. Constr. Co. [Howell Co.],
 
 159 AD2d 352;
 
 Glasser v Price,
 
 35 AD2d 98). Akin to piercing the corporate veil to “prevent fraud or to achieve equity”
 
 (International Aircraft Trading Co. v Manufacturers Trust Co.,
 
 297 NY 285, 292), this exception applies as well in determining whether a nonsignatory to an arbitration agreement should be bound by it
 
 (see, Matter of Sbarro Holding [Shiaw Tien Yuan],
 
 91 AD2d 613). Those seeking to pierce a corporate veil of course bear a heavy burden of showing that the corporation was dominated as to the transaction attacked and that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences
 
 (Matter of Morris v New York State Dept. of Taxation & Fin.,
 
 82 NY2d 135;
 
 see, Walkovszky v Carlton,
 
 18 NY2d 414). Evidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance
 
 (Matter of Morris v New York State Dept. of Taxation & Fin., supra,
 
 at 141-142).
 

 Applying the “alter ego” test here, plaintiffs have failed to show that, even if MKI dominated Batchnotice, that control resulted in some fraud or wrong mandating disregard of the corporate form in this case. Far from seeking to avoid obligations by vesting title to the software in Batchnotice — a step allegedly motivated by the corporation’s tax considerations— MAI agreed to assume Batchnotice’s financial obligations if Batchnotice failed to fulfill them. An inference of abuse does
 
 *340
 
 not arise from this record where a corporation was formed for legal purposes or is engaged in legitimate business. There is no showing that through its domination MKI misused the corporate form for its personal ends so as to commit a fraud or wrongdoing or avoid any of its obligations
 
 (Matter of Morris v New York State Dept. of Taxation & Fin., supra,
 
 82 NY2d, at 143-144).
 

 Neither does the timing of the arrangement suggest any fraud or inequity. Plaintiffs concede that the Software Purchase Agreement was the product of substantial negotiations, including some regarding the inclusion of an arbitration clause. Although these negotiations were with MKI, plaintiffs cannot now complain that they did not know what they were agreeing to in executing the agreement with Batchnotice. Nothing suggests that plaintiffs entered into the agreement involuntarily, or that they thought they were contracting with an entity other than Batchnotice.
 

 Under these circumstances, it cannot be said that MKI has perverted “the privilege [of doing] business in a corporate form”
 
 (Berkey v Third Ave. Ry. Co.,
 
 244 NY 84, 95) and was the “alter ego” of Batchnotice for the purpose of committing some wrongful act or avoiding its obligations. As a result, we cannot impute to MKI an agreement to arbitrate.
 

 As to the Appellate Division’s alternative theory of “inextricably interwoven” agreements, we hold, that interrelatedness, standing alone, is not enough to subject a nonsignatory to arbitration.
 

 Accordingly, the order, insofar as appealed from, should be reversed, with costs, and the motion by defendant MKI Securities Corporation to stay the arbitration as against it granted. The certified question should not be answered as it is unnecessary.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine and Wesley concur.
 

 Order, insofar as appealed from, reversed, etc.