■ E.D.K. ENTERPRISES, INC., Plaintiff, and L. MICHAEL MACKEY et al., Appellants, v C & S WHOLESALE GROCERS, INC., et al., Respondents. [818 NYS2d 319]—

Carpinello, J. Appeal from an order of the Supreme Court (Ceresia, Jr., J.), entered June 1, 2005 in Rensselaer County, which, inter alia, granted defendants' motion for summary judgment dismissing the complaint.

This action arises out of the October 2000 bankruptcy of the Grand Union Company, a retail grocery store chain. In the context of that bankruptcy proceeding, the Bankruptcy Court approved the sale of substantially all of Grand Union's assets to defendant C & S Wholesale Grocers, Inc., a wholesale distributor which had been a major supplier to Grand Union. Defendant GU Markets, LLC was formed by the controlling shareholder of C & S solely for the purpose of acquiring the Grand Union stores slated to be sold in bankruptcy. Importantly, landlords of these former Grand Union stores, one of which was plaintiff E.D.K. Enterprises, Inc., were all individually notified that C & S and GU Markets had the right to assign the leases to these stores to new entities and that any such assignee would be the "sole party responsible" for the rents due. Consistent with the Bankruptcy Court order, E.D.K. was notified that a "single asset" limited liability company would be formed to acquire the lease for E.D.K.'s store located in the Town of Schaghticoke, Rensselaer County. Accordingly, a new entity, namely defendant GU Markets of Schaghticoke, LLC, was formed solely for the purpose of assuming the lease for this store. E.D.K. was given an opportunity to object to this assumption but did not do so.[1]

GU Markets of Schaghticoke operated the store, and rent was paid, until March 2002. At this time, a decision was made to close the store as it was unprofitable, causing a default on the lease. As this store was the anchor store for the strip mall where it was situated, the default under the lease ultimately precipitated E.D.K.'s default on its mortgage.

Notwithstanding the fact that E.D.K. had consented to the

---

1. In subsequent Bankruptcy Court proceedings, E.D.K. expressly consented to this arrangement.

subject assignment, plaintiffs[2] seek to impose liability on C & S and GU Markets by piercing the corporate veil of GU Markets of Schaghticoke. After discovery, Supreme Court granted summary judgment to C & S and GU Markets dismissing the complaint against them in its entirety. It also granted that portion of the motion which sought to dismiss claims for future rent and consequential damages against GU Markets of Schaghticoke. Finding no error in any of Supreme Court's determinations, we now affirm.

In order to pierce the corporate veil of GU Markets of Schaghticoke and impose liability for its legal obligations on C & S and GU Markets, plaintiffs "bear a heavy burden of showing that [GU Markets of Schaghticoke] was dominated as to the transaction attacked and that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences. Evidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance" (*TNS Holdings v MKI Sec. Corp.*, 92 NY2d 335, 339 [1998] [citations omitted]). Significantly, no inference of abuse arises "where a corporation was formed for legal purposes or is engaged in legitimate business" (*id.* at 340). Indeed, "it is perfectly legal to incorporate for the express purpose of limiting . . . liability" (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 140 [1993]).

Simply stated, the record in this case is devoid of any inequity, fraud or malfeasance. To the contrary, it is patently clear that a financially-distressed Grand Union filed in bankruptcy and rather than liquidate its assets piecemeal on the auction block, the Bankruptcy Court, through a transparent and deliberate process, determined that a sale of substantially all assets to a former supplier would result in the most meaningful return to creditors. Part of that transaction explicitly envisioned the formation of single purpose entities, each of which would assume individual leases for these troubled stores. Given this history, it is not at all surprising that some of these unprofitable stores ultimately failed.

In sum, there is no proof in this record that either C & S or GU Markets (assuming arguendo that they owned an interest in and dominated GU Markets of Schaghticoke) operated the latter in such a fashion as to defraud E.D.K. For example, while C & S supplied groceries to GU Markets of Schaghticoke (as it

---

**2.** Besides E.D.K., the other plaintiffs include the court-appointed receiver of rents, E.D.K.'s lending institution and the entity which took title to the property after the foreclosure of the mortgage (hereinafter collectively referred to as plaintiffs), all of which are successors in interest to E.D.K.'s claims.

had to Grand Union), there is no proof that these products were sold at exorbitant prices. Similarly, while GU Markets provided administrative and other services to GU Markets of Schaghticoke, the latter was indebted to the former in the amount of $456,830 when the store ultimately closed, dispelling any allegation that GU Markets enriched itself at the expense of E.D.K. Finally, we find no error in Supreme Court's limitation of damages against GU Markets of Schaghticoke.

Peters, J.P., Rose and Lahtinen, JJ., concur. Ordered that the order is affirmed, with costs.