OPINION OF THE COURT
Bernard J. Fried, J.
This action arises out of the construction of a high-rise residential condominium containing approximately 76 separate apartment units, and located at 60 East 55th Street in Manhattan (the project). Plaintiff A&V 425 LLC Contracting Co. seeks to foreclose upon 76 mechanic’s liens it filed against the individual apartment units in the building, which it helped construct.
Defendants RFD 55th Street LLC, Davis Construction Company, Inc. (DCCI), Davis & Partners, LLC (D&P), Trevor Davis, Aby J. Rosen and Michael Fuchs now move for an order (1) discharging the mechanic’s hens filed by A&V against block 1290, lots 1119, 1132, 1141, 1143 through 1150, 1156, 1158, 1160 and 1162, located in the city, state and county of New York, pursuant to Lien Law § 13 (5) and § 19 (6); (2) in connection with the discharge of those mechanic’s liens, dismissing the first cause of action as to defendants Exclusive Resorts NY Park Avenue LLC, Ratan Shah LLC and Guy Sudsataya, pursuant to CPLR 3211 (a) (1) and (7); (3) dismissing the second cause of action for breach of contract as to defendants RFD, D&P, Davis, Rosen and Fuchs, pursuant to CPLR 3211 (a) (1) and (7); and (4) dismissing the third and fourth causes of action seeking *198 quasi-contractual remedies, as to all of the defendants, pursuant to CPLR 3211 (a) (1) and (7).
For the reasons set forth below, the motion to dismiss is granted.
On August 16, 2002, DCCI retained Tishman Construction Corporation of New York to act as manager of the project, and to plan and coordinate construction (complaint f 26). RFD was the developer of the project, and owns certain units in the building (id. 1i 3). Defendant Davis is president of RFD, and chief executive officer of DCCI and D&R an affiliate of DCCI (id. 1i 7). Defendants Rosen and Fuchs are partners and/or members of RFD, and owners or officers of DCCI and D&P (id. 1111 8-9). Defendants Exclusive, Shah, Sudsataya, Mark S. Glazman, Harry Lis, Darrell M. Hallett and Richard Swartz are also owners of certain of the units in the building (id. 111113, 15, 17, 19, 21, 23).
On March 5, 2003, Tishman, acting as DCCI’s “Construction Manager” agent, entered into a contract with A&V Under the contract, A&V was to perform carpentry and drywall services, and construct acoustic ceilings at the building. In addition, pursuant to the contract, which was amended on October 27, 2003, A&V agreed to furnish work, labor and services, equipment and materials, and insurance with respect to those services for the principal sum of $2,400,000 (id. 11 27). Due to change orders and additional work, for which A&V was to be paid the agreed price and the fair and reasonable value thereof, the principal sum for the contract was increased to $2,693,018.78 (id. 11 28).
A&V alleges that it performed all of its obligations under the contract, and last worked on the project on October 7, 2005 (id. 11 29). A&V further alleges that it has received payment for the work, labor and services with respect to the contract in the amount of $2,552,798.10, but that $140,220.68 remains due and owing for work, labor, services, materials and equipment performed and furnished (id. If 31). A&V also alleges that, as a result of the unreasonable delay in construction caused by DCCI, RFD, D&R Davis, Rosen and Fuchs, it suffered damages in the amount of $1,250,000 in additional insurance costs, labor costs, increased material costs and additional supervision and management costs (id. 11 32).
First Cause of Action — Lien Foreclosure
On May 30, 2006, A&V filed 76 mechanic’s liens against various individual condominium units in the building owned by *199 defendants RED, Exclusive, Shah, Sudsataya, Glazman, Lis, Hallett and Swartz (id., 1Í 33). In its first cause of action, A&V seeks foreclosure of all of those liens. As is relevant to defendants’ motion to dismiss, Exclusive owns 13 units that have been liened by A&V (the Exclusive units), while Shah and Sudsataya each own one such unit (the Shah unit and the Sudsataya unit) (see affirmation of Stephen Stallings, exhibits 3-5 [attaching copy of liens]).
There is no allegation in the complaint that D&I) Davis, Rosen or Fuchs own any units in the building, which have been liened by A&V nor is there any allegation that they or RED have any contractual relationship with A&V or are otherwise contractually liable to A&V
After the date that A&V alleges that it last worked on the project, but before the date that A&V filed its liens, RED sold the Exclusive units, the Shah unit and the Sudsataya unit to Exclusive, Shah and Sudsataya, respectively (see id., exhibits 6-8 [attaching copies of deeds transferring title to these parties]). As the cover sheet for each deed indicates in the lower right-hand corner next to the seal of the New York City Register’s Office, all of the deeds were recorded prior to May 30, 2006, the date that A&V filed its liens (see id.).
Each of these deeds contains a “trust fund” provision that complies with Lien Law § 13 (5), which states:
“Grantor, in compliance with Section 13 of the Lien Law of New York, covenants that Grantor will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the same for any other purpose.”
The moving defendants contend that, as a result of this provision and pursuant to Lien Law § 13 (5), the liens filed against Exclusive, Shah and Sudsataya are invalid, cannot be foreclosed, and should be discharged of record pursuant to Lien Law § 19 (6). Consequently, defendants seek dismissal of the first cause of action as against Exclusive, Shah and Sudsataya.
If certain requirements are fulfilled, the Lien Law protects purchasers of real property against mechanic’s liens filed by contractors for work performed prior to the purchase of such property. As long as the deed transferring the property complies with the specific requirements of Lien Law § 13 (5) — i.e., *200 contains the trust fund provision, a lien filed after the recording of the deed is not subject to foreclosure by the contractor. Here, as set forth below, A&V filed 15 liens, after the individual units were sold by RED to third parties, for work allegedly performed prior to these sales, and all of the deeds contain the provision required by Lien Law § 13 (5). As a result, the liens are invalid, and must be discharged pursuant to Lien Law § 19 (6).
“While the Lien Law is generally designed to protect contractors, material providers and other classes of workers who supply labor or furnish materials” (Leonard Eng’g v Zephyr Petroleum Corp., 135 AD2d 795, 797 [2d Dept 1987], citing Lien Law § 2), Lien Law § 13 (5) “is an exception which is specifically designed to protect purchasers of realty” (Leonard Eng’g at 797). Lien Law § 13 (5) provides, in relevant part:
“No instrument of conveyance recorded subsequent to the commencement of the improvement, and before the expiration of the period specified in section ten of this chapter for filing of notice of lien after the completion of the improvement, shall be valid as against liens filed within a corresponding period of time measured from the recording of such conveyance, unless the instrument contains a covenant by the grantor that he will receive the consideration for such conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and that he will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose” (emphasis added).
Where the requirements of Lien Law § 13 (5) are met, a lien filed after the recording of a deed that transfers the property to a third party is invalid. For example, in Leonard Eng’g, the plaintiff provided engineering services for property owned by defendant Zephyr. Subsequent to the completion of its work, but prior to the date that the plaintiff filed its mechanic’s lien, Zephyr sold the property to defendant New York Paving. The deed conveying the property to New York Paving contained a provision that complied with the requirements of Lien Law § 13 (5). After the plaintiff commenced its foreclosure action, New York Paving moved to discharge the lien pursuant to Lien Law § 19 (6), and to dismiss the complaint pursuant to CPLR 3211 (a) (7). The court below granted the motion on the ground that the lien had misdescribed the property. Although the Second *201 Department affirmed the discharge of the Ken and the dismissal of the complaint, it did so on different grounds:
“As a result of the provisions of Lien Law § 13 (5) and the trust fund provision in the deed from Zephyr to New York Paving, New York Paving is protected from liability for the debt owed by Zephyr. . . .
“Since the deed to New York Paving contained the statutory trust fund provision, the plaintiffs Ken is not valid against the deed conveying the property to New York Paving. Accordingly, the plaintiffs recourse, if any, does not lie against New York Paving.” (Id. at 796-797.)
Similarly, in Servidone v Hirschmann (268 App Div 347 [3d Dept 1944], affd 294 NY 786 [1945]), the defendant Hirschmann conveyed her property to the defendant McGrane subsequent to the plaintiff completing its construction work on the project, but before the plaintiff filed its mechanic’s Ken. The deed of conveyance contained a provision which complied with Lien Law § 13 (5). After trial, a judgment was entered which, inter alia, directed the foreclosure of the mechanic’s Ken against the property. On appeal, the Court determined that, since the deed “contained the covenant provided by subdivision 5 of Section 13 of the Lien Law, which would give it precedence over the Ken ... it was beyond the power of the trial court to direct the foreclosure of the Ken against the premises in question” (id. at 349; see also Thurber Lbr. Co. v N.F.B. Dev. Corp., 215 AD2d 551 [2d Dept 1995] [when lienor filed notice of mechanic’s Ken after developer had conveyed its interest in liened premises to grantee, notice of Ken was ineffective against grantee, as deed - was recorded prior to filing notice of Ken, and contained provision complying with Lien Law § 13 (5)]; 76A NY Jur 2d, Mechanics’ Liens § 147 [“Nothing in the Lien Law subjects the title of a purchaser of real property for value whose conveyance is recorded prior to the filing of a Ken to any such Ken, provided the instrument of conveyance contains the trust fund covenant specified in the priority statute for conveyances”]).
Here, the mechanic’s Kens filed by A&V against the Exclusive, Shah and Sudsataya units are invalid, and cannot be foreclosed. According to A&V’s Kens and its complaint, it last performed work on the project on October 7, 2005, and filed the mechanic’s Kens on May 30, 2006 (complaint 1Í11 29, 33). RED sold these units to Exclusive, Shah and Sudsataya, and their deeds were *202 recorded prior to the date that A&V filed its liens (see Stallings affirmation, exhibits 6-8). All of the deeds contain identical provisions that comply with Lien Law § 13 (5) (see id.). As a result, A&V’s liens against the Exclusive units, the Shah unit and the Sudsataya unit are invalid and are not subject to foreclosure pursuant to Lien Law § 13 (5), and must be discharged pursuant to Lien Law § 19 (6). Consequently, since A&V cannot foreclose on these liens, the first cause of action as against Exclusive, Shah and Sudsataya must be dismissed.
A&V’s sole response in opposition to the discharge of the 15 mechanic’s liens it filed against the units owned by Exclusive, Shah and Sudsataya is to claim that because they obtained mortgages to purchase their units, rather than paying cash, Lien Law § 13 (3) is applicable, rather than Lien Law § 13 (5). Lien Law § 13 (3) provides:
“Every such building loan mortgage and every mortgage recorded subsequent to the commencement of the improvement and before the expiration of the period specified in section ten of this chapter for filing of notice of lien after the completion of the improvement shall contain a covenant by the mortgagor that he will receive the advances secured thereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of improvement, and that he will apply the same first to the payment of the cost of improvement before using any part of the total of the same for any other purpose.”
A&V contends that because each of the mortgages taken out by Exclusive, Shah and Sudsataya contains the clause mandated by Lien Law § 13 (3), a lien filed after the recording of a deed that transfers the property to a third party is not invalid, as “those clauses rendered the mortgagors trustees of the mortgages’ proceeds for the benefit of [A&V]” (plaintiff’s brief at 5). As such, A&V argues, Lien Law § 13 (5) does not govern, and the liens may not be discharged.
This argument, however, misreads section 13 of the Lien Law. Section 13 is the provision in the Lien Law, which governs the priority between liens, mortgages and deeds. Subdivision (1) sets forth the general priority rule:
“A lien for materials furnished or labor performed in the improvement of real property shall have priority over a conveyance, mortgage, judgment or other claim against such property not recorded, *203 docketed or filed at the time of the filing of the notice of such lien, except as hereinafter in this chapter provided.” (Lien Law § 13 [1] [emphasis added].)
Subdivision (2) provides exceptions to this general rule for both mortgages and building loan mortgages, giving advances of mortgage proceeds priority over mechanic’s liens under certain circumstances. One requirement to qualify for such an exception is that the mortgage “contains the covenant required by subdivision three hereof’ (Lien Law § 13 [2]). If the mortgage contains the subdivision (3) covenant, any advances of the mortgage made prior to the filing of the lien have priority over that lien (id.). Section 13 (3), therefore, in conjunction with subdivision (2), simply sets forth the requirements that must be met for a mortgagee to gain priority over a mechanic’s lien claimant. In this action, there is no claim or dispute between A&V and any mortgagee. Thus, Lien Law § 13 (3) has no bearing on the validity of a mechanic’s lien that is filed after a deed is recorded where that deed complies with section 13 (5).
Moreover, subdivision (4) of section 13 further undermines A&V’s position. This subdivision provides:
“Nothing in subdivision two or three of this section shall apply to any mortgage given by a purchaser for value from an owner making the improvement and recorded prior to the filing of a lien pursuant to this chapter, provided the instrument of conveyance contains the provisions mentioned in subdivision five herein.” (Lien Law § 13 [4] [emphasis added].)
Here, the requirements of subdivision (4) have been met, making subdivision (3) inapplicable to the present dispute. Exclusive, Shah and Sudsataya purchased their units for value from RFD, which made the improvements. Their mortgages were recorded prior to the filing of A&V’s liens (Stallings affirmation 1i 4; F. Lloyd Garten affirmation, exhibits A-C). The deeds for these units each contain the provision required by section 13 (5) (Stallings affirmation K 7, exhibits 6-8).
Second Cause of Action — Breach of Contract
According to the complaint, A&V entered into the contract with Tishman as agent for DCCI (complaint It 27). In its second cause of action, despite claiming that the contract is with DCCI, A&V nevertheless seeks to recover $140,220.68 for the alleged breach of that contract not only from DCCI, but also from RFD, D&I] Davis, Rosen and Fuchs (complaint 11 42). These entities and individuals are not alleged to be parties to the contract, nor *204 are there any allegations in the complaint that provide a basis for holding them contractually liable under any other theory. As a result, the second cause of action as against RFD, D&R Davis, Rosen, and Fuchs fails to state a cause of action, and must be dismissed, pursuant to CPLR 3211 (a) (1) and (7).
As a general rule, in order for someone to be liable for a breach of contract, that person must be a party to the contract (Smith v Fitzsimmons, 180 AD2d 177, 180 [4th Dept 1992] [“As a general rule, privity or its equivalent remains the predicate for imposing liability for nonperformance of contractual obligations”]; Perma Pave Contr. Corp. v Paerdegat Boat & Racquet Club, 156 AD2d 550, 551 [2d Dept 1989] [“It is well settled that a subcontractor may not assert a cause of action to recover damages for breach of contract against a party with whom it is not in privity”]; see e.g. HDR, Inc. v International Aircraft Parts, 257 AD2d 603, 604 [2d Dept 1999] [“Neither of these defendants was a party to the contract alleged to have been breached. As such, they cannot be bound by the contract”]).
Here, privity of contract does not exist — nor has it been alleged — between A&V on one hand, and RFD, D&R Davis, Fuchs or Rosen on the other. A&V alleges that “[o]n or about March 5, 2003, A&V entered into a contract (‘the Contract’) with Tishman as ‘Construction Manager’ agent for [DCCI] to perform carpentry and dry wall services, as well as to construct acoustic ceilings at the Premises” (complaint 1127). There is no allegation in the complaint that RFD, D&R Davis, Fuchs and/or Rosen executed or were otherwise a party to the contract, or that there is any other basis to claim that these defendants are liable under the contract. A review of the contract itself confirms that they are not parties (Stallings affirmation, exhibit 2). Nonetheless, A&V makes the unsupported conclusion that DCCI, RFD, D&R Davis, Fuchs and Rosen are jointly and severally liable for the claimed breaches of the contract (complaint If 42). This bare allegation, however, is not sufficient to state a cause of action against RFD, D&R Davis, Fuchs or Rosen. Without specific and detailed allegations that provide a basis for asserting contractual liability against them, the second cause of action for breach of contract fails to state a cause of action as against these parties, and must be dismissed pursuant to CPLR 3211 (a) (1) and (7).
In its opposition, A&V claims that DCCI, RFD and D&P “were mere corporate veils or alter egos for” Davis, Rosen and Fuchs (plaintiffs brief at 8). It then jumps to the conclusion that DCCI’s corporate identity should be disregarded, and that *205 all of these other entities and individuals should be liable for the alleged breach of contract by DCCI. To support this conclusion, A&V claims that the following allegation in its complaint is sufficient to state a cause of action for piercing the corporate veil:
“Upon information and belief, [RED, DCCI and D&P] and other corporate entities, limited liability companies and limited partnerships are all owned by, controlled and operated by [Davis], who with [Rosen and Fuchs] engaged in a process of commingling funds, transferring assets between ventures, sharing and commingling officers, directors, employees and revenues.” (Complaint 1f 11.)
This bare allegation, however, is not sufficient to support a claim for piercing the corporate identity of a corporation to place liability on the corporation’s owners. To do so, A&V was required to plead that “(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiffs injury” (Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135, 141 [1993]; see also TNS Holdings v MKI Sec. Corp., 92 NY2d 335, 339 [1998] [“Those seeking to pierce a corporate veil of course bear a heavy burden of showing that the corporation was dominated as to the transaction attacked and that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences”]).
A&V has not met this requirement. It has not alleged that there has been domination of DCCI by Davis or any of the other entities or individuals with respect to its dealings with A&V nor has it alleged that they used that domination to commit a fraud on A&V As such, the second cause of action must be dismissed. Third and Fourth Causes of Action — Quasi-Contractual Claims
The third and fourth causes of action seek quasi-contractual remedies against all of the defendants. The third cause of action seeks to recover in quantum meruit, while the fourth cause of action seeks to recover for defendants’ unjust enrichment (complaint 1111 43-51). However, the existence of a written contract covering the issues in dispute which has been fully performed, as A&V alleges (complaint 11 40), precludes A&V from pursuing any quasi-contractual remedies. As a result, the third and fourth causes of action must be dismissed as well, pursuant to CPLR 3211 (a) (1) and (7).
*206 In Clark-Fitzpatrick, Inc. v Long Is. R.R. Co. (70 NY2d 382 [1987]), the seminal case on quasi-contractual remedies, the Court of Appeals clearly held that the existence of a fully performed written contract that covers the scope of a dispute precludes claims in quasi-contract. In that case, the plaintiff was the general contractor under a written contract with the defendant to perform certain railroad track improvements. After completing the project, the plaintiff commenced an action, alleging claims, inter alia, for breach of the written contract, and in quasi-contract. In affirming dismissal of the quasi-contractual claims, the Court of Appeals held:
“The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. A ‘quasi contract’ only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party’s unjust enrichment. . . .
“It is impermissible ... to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties.” (Id. at 388-389 [citations omitted]; see also Goldstein v CIBC World Mkts. Corp., 6 AD3d 295, 296 [1st Dept 2004] [“A claim for unjust enrichment, or quasi contract, may not be maintained where a contract exists between the parties covering the same subject matter”]; Scavenger, Inc. v GT Interactive Software Corp., 289 AD2d 58, 59 [1st Dept 2001] [“since the matters here in dispute are governed by an express contract, defendant’s counterclaim for unjust enrichment was properly found untenable”]; Sheiffer v Shenkman Capital Mgt, 291 AD2d 295, 295 [1st Dept 2002] [“the existence of a valid and enforceable written contract governing the disputed subject matter precludes plaintiffs from recovering in quantum meruit”].)
This prohibition against quasi-contractual claims in the face of a written contract applies not only to the parties that are in privity of contract, but also to noncontracting parties as well (see Feigen v Advance Capital Mgt. Corp., 150 AD2d 281, 283 [1st Dept 1989], appeal dismissed in part and denied in part 74 *207 NY2d 874 [1989] [“a nonsignatory to a contract cannot be held liable where there is an express contract covering the same subject matter”]; Bellino Schwartz Padob Adv. v Solaris Mktg. Group, 222 AD2d 313, 313 [1st Dept 1995] [“The existence of an express contract between (defendant) Solaris and plaintiff governing the subject matter of the plaintiffs claims also bars any quasi-contractual claims against defendant Titan, as a third-party nonsignatory to the valid and enforceable contract between those parties”]). This is especially true where, as here, a subcontractor has attempted to sue an owner when privity does not exist:
“Where there is an express contract, as here, between the general contractor and the subcontractor, the owner of the subject premises may not be held directly liable to the subcontractor on a theory of implied or quasi-contract, unless he has in fact [expressly] assented to such an obligation; the mere fact that he has consented to the improvements provided by the subcontractor and accepted their benefit does not render him liable to the subcontractor, whose sole remedy lies against the general contractor.” (Contelmo’s Sand & Gravel v J & J Milano, 96 AD2d 1090, 1090 [2d Dept 1983]; see also Metropolitan Elec. Mfg. Co. v Herbert Constr. Co., 183 AD2d 758, 759 [2d Dept 1992] [“the existence of an express contract between (a supplier) and (a subcontractor) governing the particular subject matter of its claim for unjust enrichment precludes (the supplier) from maintaining a cause of action sounding in quasi contract against (the general contractor) or the owners”].)
In accordance with these principles, A&V’s third and fourth causes of action, asserting claims for in quantum meruit, and for unjust enrichment, must be dismissed as to all defendants. A&V alleges that it performed all of its work on the project pursuant to a contract between it and DCCI (complaint 11 27). That contract is in writing {id., exhibit 2). A&V also admits that it fully performed and completed its work under the contract {id. 1i 29). Consequently, A&V’s quasi-contractual claims are barred by this express written contract.
Although A&V argues in its opposition brief that by “virtue of corporate relationships that were so close as to render them indistinguishable,” RFD, D&P, Davis, Rosen and Fuchs “assented to the obligation to pay for the services rendered by A&V *208 under the Contract” (plaintiffs brief at 10); A&V however, has not made any such allegation in its complaint. Moreover, even if the complaint contained such an allegation, this allegation would not be sufficient to allow its quasi-contractual claims to continue. “[I]t is a firmly established principle that a property owner who contracts with a general contractor does not become liable to a subcontractor on a quasi-contract theory unless it expressly consents to pay for the subcontractor’s performance” (Perma Pave Contr. Corp. v Paerdegat Boat & Racquet Club, 156 AD2d at 551 [emphasis added]). “The owner’s mere consent to and acceptance of improvements placed on his property by the subcontractor, without more, does not render it liable to the subcontractor” (id., citing Contelmo’s Sand & Gravel v J & J Milano, 96 AD2d 1090 [1983], supra).
Accordingly, it is ordered that the motion to discharge the mechanic’s liens filed by plaintiff A&V 425 Contracting Co. against block 1290, lots 1119, 1132, 1141, 1143 through 1150, 1156, 1158, 1160 and 1162, located in the city, state and county of New York is granted; and it is further ordered that the motion to dismiss is granted, and the first cause of action is dismissed against defendants Exclusive Resorts NY Park Avenue LLC, Ratan Shah LLC and Guy Sudsataya; the second cause of action is dismissed against defendants RED 55th Street LLC, Davis & Partners, LLC, Trevor Davis, Aby J. Rosen and Michael Fuchs; and the third and fourth causes of action are dismissed in their entirety against all defendants.