Matter of Alliance Masonry Corp. (Corning Hosp.) (2019 NY Slip Op 09348)





Matter of Alliance Masonry Corp. (Corning Hosp.)


2019 NY Slip Op 09348


Decided on December 26, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 26, 2019

528576 528590

[*1]In the Matter of the Arbitration between Alliance Masonry Corp., Respondent, and Corning Hospital, Appellant.

Calendar Date: November 20, 2019

Before: Clark, J.P., Mulvey, Devine and Pritzker, JJ.


Nixon Peabody LLP, Albany (Daniel J. Hurteau of counsel), for appellant.
Coughlin & Gerhart, LLP, Binghamton (Alan J. Pope of counsel), for Alliance Masonry Corp., respondent.
Hinman, Howard & Kattell, LLP, East Greenbush (Ronald L. Greene of counsel), for Andrew R. Mancini Associates, Inc., respondent.



Mulvey, J.
Appeals from two orders of the Supreme Court (Lebous, J.), entered July 17, 2018 in Broome County, which granted petitioners' applications pursuant to CPLR 7503 to permanently stay arbitration between the parties.
In 2012, respondent Corning Hospital (hereinafter respondent) contracted with joint venture Gilbane Building Co./Welliver McGuire Inc. (hereinafter Gilbane) to serve as the general contractor for the construction of a new medical facility. Gilbane subcontracted with petitioner Andrew R. Mancini Associates, Inc. (hereinafter Mancini) to perform general construction for the project. Mancini thereafter subcontracted with petitioner Alliance Masonry Corp. (hereinafter Alliance) to perform masonry work, including installation of veneer stone panels. For some reason, the panels began to fall off the building. After interactions between various parties regarding this problem, respondent filed demands for arbitration against Mancini and Alliance, each of which filed a petition to permanently stay and dismiss the arbitration (see CPLR 7503 [b]). Supreme Court granted both applications in one decision. Respondent appeals.
An agreement to arbitrate, and thereby "surrender the right to resort to the courts," must be in writing, "must be clear, explicit and unequivocal and must not depend upon implication or subtlety" (Matter of Waldron [Goddess], 61 NY2d 181, 183-184 [1984] [internal citations omitted]; see CPLR 7501; Giffone v Berlerro Group, LLC, 163 AD3d 780, 780 [2018]; Pursuit Inv. Mgt., LLC v Alpha Beta Capital Partners, L.P., 127 AD3d 565, 565-566 [2015]; Grovesteen v New York State Pub. Empls. Fedn., AFL-CIO, 265 AD2d 784, 785 [1999]). Nonsignatories to an arbitration agreement generally may not be compelled to arbitrate except in limited circumstances where the intent to arbitrate may be imputed upon the nonsignatory (see Matter of Belzberg v Verus Invs. Holdings Inc., 21 NY3d 626, 630 [2013]; TNS Holdings v MKI Sec. Corp., 92 NY2d 335, 339 [1998]; Matter of Long Is. Power Auth. Hurricane Sandy Litig., 165 AD3d 1138, 1141 [2018]). The intent to arbitrate may be imputed on a nonsignatory where, for example, an arbitration agreement is incorporated into another contract by reference, the nonsignatory has been directly benefitted by the agreement containing the arbitration clause or the nonsignatory is an intended third-party beneficiary of the agreement (see Matter of Belzberg v Verus Invs. Holdings Inc., 21 NY3d at 630; Matter of Long Is. Power Auth. Hurricane Sandy Litig., 165 AD3d at 1141; Huntsman Intl. LLC v Albemarle Corp., 163 AD3d 420, 421 [2018], lv dismissed and denied 32 NY3d 1040 [2018]; Matter of Wonder Works Constr. Corp. v R.C. Dolner, Inc., 73 AD3d 511, 513 [2010]; Warner v U.S. Sec. & Futures Corp., 257 AD2d 545, 545 [1999], lv denied 93 NY2d 807 [1999]; General Ry. Signal Corp. v Comstock & Co., 254 AD2d 759, 759 [1998], lv dismissed 93 NY2d 881 [1999]; Matter of Crawford v Feldman, 199 AD2d 265, 266 [1993]). "While an agreement to arbitrate can be incorporated by reference, any such reference must clearly show such an intent to arbitrate" (Matter of Aerotech World Trade v Excalibur Sys., 236 AD2d 609, 611 [1997] [citations omitted], lv denied 90 NY2d 812 [1997]; accord Navillus Tile, Inc. v Bovis Lend Lease LMB, Inc., 74 AD3d 1299, 1302 [2010]; see General Ry. Signal Corp. v Comstock & Co., 254 AD2d at 759).
The arbitration clause in the prime contract between respondent and Gilbane was not clearly and unequivocally incorporated by reference into the subcontracts. The contract between respondent and Gilbane specified that any "[c]laims, disputes and other matters in question between the parties . . . shall be submitted and resolved as provided in the General Conditions." The General Conditions include the following arbitration clause: "Any controversy or claim arising out of or related to any agreement between Owner, Contractor, Architect or any Subcontractor . . . shall be settled by arbitration." However, "[u]nder New York law, incorporation clauses in a construction subcontract, incorporating prime contract clauses by reference into a subcontract, bind a subcontractor only as to prime contract provisions relating to the scope, quality, character and manner of the work to be performed by the subcontractor" (Navillus Tile, Inc. v Bovis Lend Lease LMB, Inc., 74 AD3d at 1302 [internal quotation marks and citation omitted]; accord Persaud v Bovis Lend Lease, Inc., 93 AD3d 831, 833 [2012]; Matter of Wonder Works Constr. Corp. v R.C. Dolner, Inc., 73 AD3d at 513).
Although the Gilbane-Mancini subcontract and the Mancini-Alliance subcontract incorporate by reference the prime contract and General Conditions agreed upon between respondent and Gilbane, those subcontracts do not contain separate arbitration provisions or explicitly mention the arbitration section of the General Conditions. To the contrary, the Gilbane-Mancini subcontract uses language implying a right to litigate in courts rather than arbitrate, including statements concerning the right to pursue any and all remedies available "at law or in equity," to recover "court costs," a waiver of "trial by jury in any action or proceeding," and mentioning "litigation hereunder" that includes the property owner or a third party. Similarly, the Mancini-Alliance subcontract discusses Alliance's obligations if Alliance "elects to take legal action to collect any amount" due, and notes Alliance's agreement "to submit to the jurisdiction of the courts of [the] State of New York," with "venue of any proceeding brought under this [s]ubcontract" being in Broome County. Despite language in the General Conditions specifying that any subcontracts were to include an arbitration clause in accordance with the General Conditions,[FN1] the subcontracts failed to include the requisite language and, rather, included language that illustrates that it was not the intent of the parties to the subcontracts to arbitrate disputes arising from the construction project. Because the subcontracts do not clearly express the parties' intent to arbitrate disputes or properly incorporate arbitration provisions by reference, those subcontracts do not provide a basis to require the parties to submit to arbitration (see SJS Constr. Co., Inc. v Darius Masonry, Inc., 156 AD3d 933, 934 [2017]; Matter of Wonder Works Constr. Corp. v R.C. Dolner, Inc., 73 AD3d at 514).
Considering another possible avenue for imputing the intent to arbitrate, "[u]nder the direct benefits theory of estoppel, a nonsignatory may be compelled to arbitrate where the nonsignatory knowingly exploits the benefits of an agreement containing an arbitration clause, and receives benefits flowing directly from the agreement" (Matter of Belzberg v Verus Invs. Holdings Inc., 21 NY3d at 631 [internal quotation marks and citations omitted]; accord Matter of Long Is. Power Auth. Hurricane Sandy Litig., 165 AD3d at 1141; see Oxbow Calcining USA Inc. v American Indus. Partners, 96 AD3d 646, 649-650 [2012] [noting that a "party seeking to compel arbitration must demonstrate that the party seeking to avoid arbitration relies on the terms of the agreement containing the arbitration provision in pursuing its claim"]). "Where the benefits are merely 'indirect,' a nonsignatory cannot be compelled to arbitrate a claim. A benefit is indirect where the nonsignatory exploits the contractual relation of the parties, but not the agreement itself" (Matter of Belzberg v Verus Invs. Holdings Inc., 21 NY3d at 631). Noting that "it can be difficult to distinguish between direct and indirect benefits," the Court of Appeals stated that "[t]he guiding principle is whether the benefit gained by the nonsignatory is one that can be traced directly to the agreement containing the arbitration clause" (id. at 633).
Respondent argues that Mancini and Alliance are estopped from compelling litigation regarding the veneer stone panels because Alliance previously served a demand for arbitration on Gilbane and Mancini, with the demand specifically stating that one of the bases for seeking arbitration was the dispute resolution section of the General Conditions related to the construction project (see God's Battalion of Prayer Pentecostal Church, Inc. v Miele Assoc., LLP, 6 NY3d 371, 374 [2006] [binding the plaintiff to an unsigned contract that contained an arbitration provision and directing the plaintiff to participate in arbitration where the plaintiff alleged in a complaint that the other party breached that unsigned contract]; Matter of Long Is. Power Auth. Hurricane Sandy Litig., 165 AD3d at 1142). Following that demand for arbitration, Alliance, Gilbane and Mancini took part in mediation, as required prior to arbitration per a provision of the dispute resolution section of the General Conditions — a provision that Alliance also cited in its demand for arbitration. As a result of the mediation, those three entities then entered into a settlement agreement and released each other from liability regarding anything related to the veneer panels.
Although the matter did not proceed to arbitration after Alliance filed its demand for arbitration, Alliance exploited the General Conditions of the project by relying on that document's arbitration provision, as well as another provision specifying that the parties will attempt negotiations and mediation before arbitration. Alliance was successful in its demand, considering that neither Gilbane nor Mancini objected to the demanded arbitration and, instead, they all proceeded with the pre-condition to arbitration (i.e., mediation), which resulted in a settlement of the matters at issue. Mancini, though not having filed its own demand for arbitration, did not object to Alliance's demand and participated in the mediation and settlement. Pursuant to that settlement, Gilbane paid Mancini $503,500 and Mancini paid Alliance $180,000, in exchange for full releases for any claims related to the veneer panels. Based on Alliance's demand citing the applicability of the arbitration section of the General Conditions, and Mancini's acquiescence to that demand, both of these nonsignatories to the prime contract and General Conditions should be compelled to arbitrate pursuant to the direct benefits theory of estoppel. Accordingly, the applications to permanently stay arbitration should have been denied, and the parties should proceed to arbitration.
Clark, J.P., Devine and Pritzker, JJ., concur.
ORDERED that the orders are reversed, on the law, with costs, and petitioners' applications to permanently stay arbitration denied.



Footnotes

Footnote 1: The General Conditions require that "[a]ny contract between Contractor and any Subcontractor shall include provisions for arbitration."