Americore Drilling & Cutting, Inc. v EMB Contr. Corp. (2021 NY Slip Op 05845)





Americore Drilling & Cutting, Inc. v EMB Contr. Corp.


2021 NY Slip Op 05845


Decided on October 27, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 27, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
LEONARD B. AUSTIN
FRANCESCA E. CONNOLLY
WILLIAM G. FORD, JJ.


2017-07178 
2018-10423
 (Index No. 3276/13)

[*1]Americore Drilling & Cutting, Inc., respondent,
v
EMB Contracting Corp., defendant, Chilled Properties, LLC, appellant.


Walden Macht & Haran LLP, New York, NY (Jim Walden, Daniel Cohen, and Jacob S. Gardener of counsel), for appellant.



DECISION & ORDER
In an action, inter alia, to recover damages for breach of contract, the defendant Chilled Properties, LLC, appeals from (1) a judgment of the Supreme Court, Queens County (Timothy J. Dufficy), entered June 7, 2017, and (2) an order of the same court entered July 13, 2018. The judgment, insofar as appealed from, upon a decision of the same court, made after a nonjury trial, is in favor of the plaintiff and against that defendant in the principal sum of $118,000. The order denied that defendant's motion pursuant to CPLR 5015(a) to vacate the judgment.
ORDERED that the judgment is reversed insofar as appealed from, on the law, the complaint is dismissed insofar as asserted against the defendant Chilled Properties, LLC, and the order entered July 13, 2018, is vacated; and it is further,
ORDERED that the appeal from the order is dismissed as academic in light of our determination on the appeal from the judgment; and it is further,
ORDERED that one bill of costs is awarded to the defendant Chilled Properties, LLC, payable by the plaintiff.
The defendant Chilled Properties, LLC (hereinafter Chilled), owned certain real property located in Long Island City and retained the defendant EMB Contracting Corp. (hereinafter EMB) as its general contractor to build a hotel on that property. In 2012, EMB retained the plaintiff
to perform interior cuts for duct work in the hotel. Subsequently, EMB retained the plaintiff to perform work on the hotel's balconies.
In 2013, the plaintiff commenced the instant action against EMB and Chilled, alleging that it was not paid approximately $118,000 for the work it performed on the balconies. The first cause of action alleged breach of contract against EMB. The second cause of action sought to recover in quantum meruit against EMB. The third cause of action sought to foreclose a mechanic's lien against both defendants. The fourth cause of action alleged a violation of Lien Law article 3-A against EMB.
A nonjury trial was conducted in November 2016. During his opening statement, the defendants' attorney stated his intention to move to dismiss the complaint insofar as asserted against [*2]Chilled after the close of the plaintiff's case because the only cause of action asserted against Chilled was the third cause of action, which sought to foreclose the mechanic's lien, which, he contended, was a legal nullity because the plaintiff failed to file a notice of pendency. The plaintiff's attorney did not contest that prior counsel did not file a notice of pendency and that the lien was void. He contended, however, that there may be "alter ego liability" because both EMB and Chilled were owned by the Batalias family, and that he would be entitled to move to conform the pleadings to the proof. The Supreme Court dismissed the third cause of action, but did not dismiss the complaint insofar as asserted against Chilled.
During its case-in-chief, the plaintiff called Elisavet Batalias (hereinafter Elisavet), who testified over the objection of the defendants' attorney regarding her ownership interests, as well as the ownership interests of her parents and four siblings, in various entities, including EMB and Chilled. Elisavet testified that she owned EMB from 1998 or 1999 through 2010 or 2011. She further testified that in 2010 or 2011, she gave her father, Michael Batalias (hereinafter Michael), her ownership interest in EMB because EMB owed him money; however, she continued to work for EMB until 2015.
Elisavet testified that in the 1980s, Michael and her mother purchased a parcel of real property, and many years later, Elisavet and her four siblings purchased an adjoining parcel (hereinafter the subject lots). According to Elisavet, beginning around 2007 to 2008, while Elisavet was its sole owner, EMB performed approximately $4.5 million worth of foundation and concrete work on the subject lots, for which it was not paid. Elisavet testified that in 2010 or 2011, she, as partial owner of one of the parcels, her parents, and her siblings agreed to the transfer of the subject lots to her individually in lieu of paying EMB the approximately $4.5 million it was owed. She further testified that the property was transferred to her individually because EMB owed her money in retained earnings and she was looking to wind down her interest in EMB at that time. Elisavet testified that she transferred the subject lots to Chilled, an entity she and her siblings formed in 2011 and of which the five Batalias siblings were the only owners, as a capital contribution because she and her siblings decided to build a hotel on that property.
In its proposed findings of fact and conclusions of law, the plaintiff, inter alia, requested that the Supreme Court conform the pleadings to the proof and hold, in effect, that Chilled was an alter ego of EMB, and further requested, in effect, that the court pierce EMB's corporate veil and hold Chilled liable for EMB's failure to pay the plaintiff.
In its decision after trial, the Supreme Court found, inter alia, that EMB entered into an oral agreement with the plaintiff to perform the balcony work and EMB failed to pay the plaintiff $118,000. Although the court purported to deny that branch of the plaintiff's application which was to add a cause of action alleging that Chilled was an alter ego of EMB, or to pierce EMB's corporate veil, because that is not a separate cause of action under New York law, the court held that "[t]he lack of a formal cause of action in no way precludes the availability of the remedy." The court held that the Batalias family used its control over both EMB and Chilled to commit a wrong causing injury to the plaintiff and that this was a "sufficient showing to pierce the corporate veil under the alter ego theory and sustain contract claims" against both EMB and Chilled. On June 7, 2017, the Supreme Court entered judgment in favor of the plaintiff and against EMB and Chilled, jointly and severally, in the principal sum of $118,000. Chilled appeals.
The Supreme Court improvidently exercised its discretion by, in effect, granting that branch of the plaintiff's application which was to conform the complaint to the proof so as to assert causes of action against Chilled under the theory of piercing EMB's corporate veil or the theory that Chilled was an alter ego of EMB (see generally Marone v Kally, 109 AD3d 880, 881; Bonanni v Straight Arrow Publs., 133 AD2d 585, 587). To the extent the court held that it was not necessary to amend the plaintiff's complaint because New York does not recognize a separate cause of action to pierce the corporate veil, this was error. It is correct that "an attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its [parent]" (Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135, 141; see Cioffi v S.M. Foods, Inc., 129 AD3d 888, 894). However, in order for a plaintiff to [*3]state a viable claim against a parent or alter ego of the corporation, the plaintiff must allege facts that, if proved, indicate that the parent or alter ego exercised complete domination of the corporation in respect to the transaction attacked and that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury (see Cortlandt St. Recovery Corp. v Bonderman, 31 NY3d 30, 47-48; East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc., 16 NY3d 775, 776; TNS Holdings v MKI Sec. Corp., 92 NY2d 335, 339; Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d at 142; TMCC, Inc. v Jennifer Convertibles, Inc., 176 AD3d 1135, 1136). Here, because the complaint contained no such factual allegations, the plaintiff was required to request leave to amend the complaint and satisfy the requirements of CPLR 3025 (see Fairpoint Cos., LLC v Vella, 134 AD3d 645, 646; East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc., 90 AD3d 820, 821; Russo v Lapeer Contr. Co., Inc., 84 AD3d 1344; Bonanni v Straight Arrow Publs., 133 AD2d 585, 587).
Under CPLR 3025, a party may amend a pleading "at any time by leave of court" (id. § 3025[b]), "before or after judgment to conform [the pleading] to the evidence" (id. § 3025[c]; see Kimso Apts., LLC v Gandhi, 24 NY3d 403, 411; Obstfeld v Thermo Niton Analyzers, LLC, 168 AD3d 1080, 1084). "Applications to amend pleadings are within the sound discretion of the court" (Kimso Apts., LLC v Gandhi, 24 NY3d at 411; see Loomis v Civetta Corinno Constr. Corp., 54 NY2d 18, 23; Obstfeld v Thermo Niton Analyzers, LLC, 168 AD3d at 1084). "A request to amend is determined in accordance with the general considerations applicable to such motion, including the statute's direction that leave 'shall be freely given upon such terms as may be just'" (Kimso Apts., LLC v Gandhi, 24 NY3d at 411, quoting CPLR 3025[b]). "This favorable treatment applies even if the amendment substantially alters the theory of recovery" (Kimso Apts., LLC v Gandhi, 24 NY3d at 411 [internal quotation marks omitted]; see Mack-Cali Realty, L.P. v Everfoam Insulation Sys., Inc., 129 AD3d 676, 678).
"[A]bsent prejudice, courts are free to permit amendment even after trial" (Kimso Apts., LLC v Gandhi, 24 NY3d at 411; see Metropolitan Lofts of NY, LLC v Metroeb Realty 1, LLC, 160 AD3d 632, 636; 715 Ocean Parkway Owners Corp. v Klagsbrun, 74 AD3d 1314, 1315). "Prejudice, of course, is not found in the mere exposure of the defendant to greater liability. Instead, there must be some indication that the defendant has been hindered in the preparation of his [or her] case or has been prevented from taking some measure in support of his [or her] position" (Loomis v Civetta Corinno Constr. Corp., 54 NY2d at 23; Metropolitan Lofts of NY, LLC v Metroeb Realty 1, LLC, 160 AD3d at 636). "The burden of establishing prejudice is on the party opposing the amendment" (Kimso Apts., LLC v Gandhi, 24 NY3d at 411; see Metropolitan Lofts of NY, LLC v Metroeb Realty 1, LLC, 160 AD3d at 636).
Here, Chilled demonstrated that it was prejudiced in the preparation of its defense by the lack of notice that the plaintiff would seek to pierce EMB's corporate veil or prove that Chilled was an alter ego of EMB (see Riverside Capital Advisors, Inc. v First Secured Capital Corp., 28 AD3d 452, 455; Symbax, Inc. v Bingaman, 219 AD2d 552, 553; Chainani by Chainani v Board of Educ. of City of N.Y., 201 AD2d 693, 696, affd 87 NY2d 370; Schaefer v Guddemi, 182 AD2d 808, 809; DiMauro v Metropolitan Suburban Bus Auth., 105 AD2d 236, 240; cf. Rosenzweig v Howlan, 166 AD3d 1146, 1147). In general, claims involving veil piercing or alter ego liability are fact-laden (see Arjumand v LaGuardia Express, LLC, 195 AD3d 988; Damianos Realty Group, LLC v Fracchia, 35 AD3d 344, 344). Chilled established that the lack of notice hindered its ability to present evidence that might have shown, inter alia, that corporate formalities were respected or that EMB and Chilled dealt with each other at arms' length. Thus, under the circumstances of this case, the Supreme Court improvidently exercised its discretion by, in effect, granting that branch of the plaintiff's application which was to conform the pleadings to the proof so as to assert causes of action against Chilled under theories of veil-piercing or alter ego liability.
In any event, upon our independent review of the evidence presented at trial, we find that the Supreme Court did not properly determine that the plaintiff established that Chilled was an alter ego of EMB (see TNS Holdings v MKI Sec. Corp., 92 NY2d at 339; Vivir of L I, Inc. v Ehrenkranz, 145 AD3d 834, 836; Edward Tyler Nahem Fine Art, L.L.C. v Barral, 136 AD3d 477, 478; City Ready Mix, Inc. v Hicksville Paving, Inc., 36 AD3d 643, 644; Treeline Mineola LLC v Berg, 21 AD3d 1028, 1029). "In reviewing a determination made after a nonjury trial, the power of [*4]this Court is as broad as that of the trial court, and we may render a judgment we find warranted by the facts, bearing in mind that in a close case, the trial judge had the advantage of seeing the witnesses" (Marini v Lombardo, 79 AD3d 932, 933; see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499; Vivir of L I, Inc. v Ehrenkranz, 145 AD3d at 835).
"A party seeking to pierce the corporate veil must establish that (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury" (TMCC, Inc. v Jennifer Convertibles, Inc., 176 AD3d at 1136 [internal quotation marks omitted]; see Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d at 140-142; Vivir of L I, Inc. v Ehrenkranz, 145 AD3d at 835-836; East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc., 66 AD3d 122, 126, affd 16 NY3d 775). "Additionally, the corporate veil will be pierced to achieve equity, even absent fraud, when a corporation has been so dominated by an individual or another corporation and its separate entity so ignored that it primarily transacts the dominator's business instead of its own and can be called the other's alter ego" (Olivieri Const. Corp. v WN Weaver St., LLC, 144 AD3d 765, 767 [internal quotation marks omitted]; see Williams v Lovell Safety Mgt. Co., LLC, 71 AD3d 671, 672). However, "[e]vidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance" (TNS Holdings v MKI Sec. Corp., 92 NY2d at 339; see Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d at 141-142; TMCC, Inc. v Jennifer Convertibles, Inc., 176 AD3d at 1136; Vivir of L.I., Inc. v Ehrenkranz, 145 AD3d at 836; Matter of Island Seafood Co. v Golub Corp., 303 AD2d 892, 895).
Here, the plaintiff failed to establish that Chilled exercised complete domination over EMB in the transaction with the plaintiff (see East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc., 66 AD3d at 127; Matter of Island Seafood Co. v Golub Corp., 303 AD2d at 895). The plaintiff's owner testified that Michael requested the balcony work. Checks and bill payment stubs admitted into evidence reflected that the plaintiff was paid from a checking account in EMB's name. A former employee of EMB testified that while she was employed by EMB, she went to Michael or another EMB employee with questions about the plaintiff's invoices. Although Elisavet testified that she approved some invoices on behalf of EMB, there was no testimony that she approved any of the plaintiff's invoices. She testified that she had not heard of the plaintiff until the dispute over its invoices arose.
Further, the plaintiff failed to establish that Chilled used its alleged domination of EMB to commit a fraud or wrong against the plaintiff (see Vivir of L I, Inc. v Ehrenkranz, 145 AD3d at 836; Treeline Mineola LLC v Berg, 21 AD3d at 1029; see also TNS Holdings v MKI Sec. Corp., 92 NY2d at 339; TMCC, Inc. v Jennifer Convertibles, Inc., 176 AD3d at 1136; Fairpoint Cos., LLC v Vella, 134 AD3d 645, 645-646; cf. AZTE, Inc. v Auto Collection, Inc., 124 AD3d 811, 812; Flushing Plaza Assoc. # 2 v Albert, 102 AD3d 737, 739). Elisavet's testimony established that the transfers which resulted in Chilled acquiring the property upon which the hotel was constructed occurred in 2011, which was before EMB retained the plaintiff and before EMB could have possibly owed the plaintiff money. There was no evidence that Chilled, or the Batalias family, took any actions in order to prevent EMB from meeting its obligation to the plaintiff, or otherwise used its alleged domination of EMB to perpetuate a wrong against the plaintiff (see Matter of Island Seafood Co. v Golub Corp., 303 AD2d at 895).
Chilled's remaining contentions either are without merit or need not be reached in light of our determination.
RIVERA, J.P., AUSTIN, CONNOLLY and FORD, JJ., concur.
ENTER:
Maria T. Fasulo
Acting Clerk of the Court