**GNHC 1703-518, LLC v Venari Partners, LLC**

2024 NY Slip Op 32388(U)

July 11, 2024

Supreme Court, New York County

Docket Number: Index No. 651347/2022

Judge: Andrea Masley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 48

------------------------------------------------------------------------------------X

GNHC 1703-518, LLC,

                                       Plaintiff,

                       - v -

VENARI PARTNERS, LLC, SWEETBRIAR CAPITAL, LLC,
MIN-FAM-HOLDING, LLC,110 PARTNERS LIMITED
LIABILITY COMPANY, UPTOWN INVESTORS L.P., JOHN
MININNO, BRAD J. BLASCHAK, JOSEPH P. RICCARDO,
PETER RICCARDO, MICHAEL CALLAGHAN, JEREMIAH
CALLAGHAN, DOES 1-25, NHCALILLY, LLC,
NHCAGILEAD, LLC, NHCABAYLASH, LLC, HEALTH
CHOICE ALLIANCE, LLC, HEALTH CHOICE
ADVOCATES, LLC, and HEALTH CHOICE GROUP, LLC,

                                   Defendants.

------------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 651347/2022 |
| **MOTION DATE** | |
| **MOTION SEQ. NO.** | 003 004 |

**DECISION + ORDER ON MOTION**

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 003) 55, 56, 57, 58, 59, 73, 84, 87, 112, 113, 114, 115, 116, 141, 163, 164

were read on this motion to/for                    DISMISS                    .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 60, 61, 62, 63, 64, 65, 74, 85, 86, 117

were read on this motion to/for            COMPEL ARBITRATION           .

     In motion 003, defendants Sweetbriar Capital, LLC, 110 Partners, LLC, and Uptown Investors, L.P (collectively, Sweetbriar Defendants), and Brad J. Blaschak, Peter Riccardo, Michael Callaghan, and Jeremiah Callaghan[1] (collectively, Individual Defendants) move to dismiss pursuant to CPLR 3211(a)(7) and (8),[2] 3013, and 3016(b).

---

[1] By stipulation dated November 17, 2022, plaintiff discontinued this action with prejudice against the Individual Defendants. (NYSCEF 140, Stipulation of Voluntary Discontinuance & Consent to Jurisdiction.)

[2] By stipulation dated November 17, 2022, the Sweetbriar Defendants consent to the jurisdiction of this court and withdraw their objections based on lack of personal jurisdiction. (*Id*. at 2.)

651347/2022 GNHC 1703-518, LLC vs. VENARI PARTNERS, LLC ET AL             Page 1 of 21
Motion No. 003 004

1 of 21

In motion 004, defendants Venari Partners, LLC (Venari), Min-Fam Holdings, LLC (Min-Fam), and John Mininno (collectively, Venari Defendants) move pursuant to CPLR 7503(a) to (i) compel arbitration and stay or dismiss this action and (ii) enjoin plaintiff from continuing to litigate *GNHC 1703-518 LLC v Venari Partners, LLC, et al., MRS-L-000590-22,* a parallel action filed in New Jersey (New Jersey Action).

## Background

In 2015, defendant Mininno formed Venari to investigate claims against pharmaceutical companies under the False Claims Act, identify targets for *qui tam* actions, build evidence against *qui tam* targets, create subsidiaries to act as plaintiff in the *qui tam* action, engage a law firm to handle the litigation, and manage the cases. (NYSCEF 23, Complaint ¶ 30.)   Mininno formed Venari with approximately $2.2 million in funds invested by the Sweetbriar Defendants and Min-Fam.  (*Id.* ¶¶ 4, 30.) Defendant Blaschak assisted Mininno in forming Venari including finding investors to fund Venari's operations.  (*Id.* ¶ 29.)   Mininno served as Venari's Chief Executive Officer and Blaschak served as the Chief Financial Officer.  (*Id.* ¶ 29.)

In 2017, Venari created defendants NHCALilly, LLC, NHCAGilead, LLC and NHCABayLash, LLC (collectively, the NHCA Nominal Defendants) to file and prosecute three *qui tam* actions (GBE Actions).  (*Id.* ¶ 4.)  Plaintiff alleges that the NHCA Nominal Defendants were created as part of strategy to quickly monetize the GBE Actions because Venari had not yielded any returns and the Sweetbriar Defendants and Min-Fam refused to contribute more capital as a result.  (*Id.* ¶¶ 32-35.)  Thus, Mininno and Blaschak "devised a scheme" to create new companies, solicit new investors, and in

651347/2022   GNHC 1703-518, LLC vs. VENARI PARTNERS, LLC ET AL
Motion No.  003 004

Page 2 of 21

2 of 21

turn, provide the Sweetbriar Defendants and Min-Fam with a return on their investment. (*Id.* ¶ 34.)

In February 2017, counsel in the GBE Actions started soliciting litigation funders for new investments to fund the GBE Actions. (*Id.* ¶ 38.) In March 2017, plaintiff, an entity created to provide litigation funding for the GBE Actions, entered into a litigation funding agreement[3] with the NHCA Nominal Defendants (Funding Agreement). (*Id.* ¶¶ 1, 38.) Pursuant to the Funding Agreement, plaintiff agreed to provide $6.8 million to finance the GBE Cases in exchange for a portion of any recoveries obtained. (*Id.* ¶ 1.) Mininno executed the Funding Agreement on behalf of the NHCA Nominal Defendants as their authorized signatory. (*Id.* ¶ 38; NYSCEF 63, Funding Agreement at GNH0000005.)

On June 8, 2017, Venari decided that three new entities, Health Choice Advocates, LLC, Health Choice Alliance, LLC, and Health Choice Group, LLC (collectively, the Health Choice Nominal Defendants), would file and prosecute the GBE cases, not the NHCA Nominal Defendants. (*Id.* ¶ 39.) Shortly after this decision, the Health Choice Nominal Defendants filed the GBE Actions. (*Id.*) There was no assignment agreement between the NHCA Nominal Defendants and the Health Choice Nominal Defendants (together, the Nominal Defendants). (*Id.* ¶ 40.) Further, the Nominal Defendants also did not have any agreement with Venari regarding the

---

[3] In conjunction with the Funding Agreement, the NHCA Nominal Defendants and plaintiff also entered into a Security Agreement and the NHCA Nominal Defendants issued Letter of Instruction to the law firm representing them in the proposed *qui tam* litigations. (*See In the Matter of the Application of GNHC 1703-518 LLC v NHCALILLY, LLC et al.,* Index No. 651756/2022, NYSCEF 2, Arbitral Award at 1.) The Purchase Agreement, Security Agreement, and Letter of Instruction are collectively referred to as the Investment Documents. (Id.)

**651347/2022   GNHC 1703-518, LLC vs. VENARI PARTNERS, LLC ET AL**
**Motion No.  003 004**

Page 3 of 21

3 of 21

[* 3]

ownership of the GBE cases. (*Id.*) Instead, plaintiff alleges that Mininno and Blaschak operated both NHCA Nominal Defendants and the Health Choice Nominal Defendants as the alter egos of Venari without regard to their separate corporate existence. (*Id.* ¶¶ 36, 41-42.)

To raise more money, in September 2017, Venari engaged in discussions with another third-party funder, TPF, about a potential investment. (*Id.* ¶¶ 45-47.) In October 2017, Venari "opened a data room for TPF to conduct its due diligence regarding a possible investment." (*Id.* ¶ 47.) In November 2017, TPF issued a draft letter of intent wherein it proposed to invest $8 million in exchange for an assignment of the Nominal Defendants' interests in the GBE cases. (*Id.* ¶ 49.) However, the Funding Agreement prohibits any assignment of the interest in GBE cases without plaintiff's express consent. (*Id.*)

In February 2018, Mininno and Blaschak presented TPF's proposal to the Sweetbriar Defendants and Min-Fam; thereafter, Mininno began seeking plaintiff's consent to consummate the TPF transaction. (*Id.* ¶¶ 51-53.) Plaintiff requested that Mininno provide a copy of the TPF transaction documents to understand the nature of the proposed transaction. (*Id.* ¶ 55.) Mininno refused, and on March 30, 2018, despite not receiving plaintiff's consent, Mininno closed the $8 million TPF transaction. (*Id.* ¶¶ 55-56.) As part of the TPF transaction, the Nominal Defendants assigned and pledged their interests in the GBE Cases to TPF and TPF deposited $3.25 million directly into Venari's operating account on the same day. (*Id.* ¶ 56.) Six days after this transfer, Mininno and Blaschak directed $2.7 million in transfers from Venari to the Sweetbriar Defendants and Min-Fam. (*Id.*)

Arbitration Proceedings against Nominal Defendants

On May 3, 2018, upon learning of the consummation of the TPF transaction, "plaintiff sent written notice of breach of the Funding Agreement." (*Id.* ¶ 57.) On June 4, 2018, plaintiff terminated the Funding Agreement for cause. (*Id.*) On August 31, 2020, plaintiff demanded arbitration of its breach of contract claims against the Nominal Defendants. (*Id.* ¶ 59.) On January 12, 2022, the arbitrator issued an award for $1,679.166.23 in plaintiff's favor.[4] (*Id.*)

As the Nominal Defendants' only substantial asset is their interest in the GBE Actions, plaintiff anticipates that they will not be able to satisfy the arbitral award. (*Id.* ¶ 68.) Thus, on May 9, 2022, plaintiff filed this action seeking a declaration that Venari is the alter ego of the Nominal Defendants and are liable for satisfying the arbitral award (Count I). Plaintiff also brings claims for actual fraudulent conveyance against Venari (Count II), constructive fraudulent conveyance against Venari (Count III), actual or constructive fraudulent conveyance against the Sweetbriar Defendants and Min-Fam (Count IV), and actual or constructive fraudulent conveyance against Mininno (Count V).

**Discussion**

Mot. Seq. No. 003

On a motion to dismiss pursuant to CPLR 3211(a)(7), the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any

---

[4] Even though not signatories to the Funding Agreement, the arbitrator found the Health Choice Nominal Defendants liable for the breaches (in addition to the NHCA Nominal Defendants) because they assumed the rights and liabilities under the Investment Documents. (*See In the Matter of the Application of GNHC 1703-518 LLC v NHCALILLY, LLC et al.,* Index No. 651756/2022, NYSCEF 2, Arbitral Award at 12-14.)

[* 5]

cognizable legal theory." (*Leon v Martinez*, 84 NY2d 83, 87-88 [1994].) "[B]are legal conclusions, as well as factual claims which are either inherently incredible or flatly contradicted by documentary evidence" cannot survive a motion to dismiss. (*Summit Solomon & Feldesman v Lacher*, 212 AD2d 487, 487, 623 N.Y.S.2d 210 [1st Dept 1995] [citation omitted].)

*New York Debtor and Creditor Law (DCL)*[5]

Plaintiff's claim against the Sweetbriar Defendants for constructive or actual fraudulent conveyance arises under former DCL §§ 273 and 276. Specifically, plaintiff alleges that "[i]f Venari is found to be the alter ego of the Nominal Defendants, then GNHC is a creditor of Venari, and Venari's April 5, 2018 transfer of $2,712,500 to the [Sweetbriar] Defendants is an actual" and/or "constructive fraudulent transfer … because that transfer was done with the actual intent to hinder, delay, or defraud GNHC from collecting the debt owed to it, was done when Venari was insolvent or soon to be insolvent, and Venari received less than reasonably equivalent value or fair consideration for those transfers." (NYSCEF 23, Complaint ¶ 94.) Plaintiff further alleges that the Sweetbriar Defendants are either initial or subsequent transferees of the fraudulent conveyances of $2,712,500 or "transfer beneficiaries of the conveyances of the GBE Cases interests from the Nominal Defendants that occurred as a result of the TPF transaction that breached the Funding Agreement." (*Id.* ¶ 96.)

---

[5] On December 6, 2019, then-Governor Andrew Cuomo signed a bill repealing Article 10 of the DCL, replacing it with the Uniform Voidable Transactions Act (UVTA). (2019 NY Ch 580, 2019 NY AB 5622; NY Dr & Cr Law, Art 10 [2023].) The UVTA took effect on April 4, 2020 and applies to transfers made or obligations incurred on or after that date. (2019 NY Ch 580, § 7.) It does not apply to transfers made or obligations incurred prior to April 4, 2020, nor to a right of action that has accrued before that effective date. (*Id.*) Here, the former DCL applies as the transfers at issue were made in 2018.

[* 6]

A. DCL § 273 - Constructive Fraudulent Conveyance

The constructive fraudulent conveyance claim arises under former DCL § 273, which provides "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." (DCL § 273 [former]; *see also Jaliman v D.H. Blair & Co. Inc.*, 105 AD 3d 646, 647 [1st Dept 2013] [internal citation omitted] [holding that DCL § 273 "involves constructive fraud, not actual fraud"].) Thus, "[t]o state a cause of action for constructive fraudulent conveyance under the statute, plaintiff must allege that: (1) plaintiff was a creditor of the transferor; (2) a transfer was made by the transferor without adequate consideration, thus (3) rendering the transferor insolvent (former DCL 273)." (*Board of Mgrs. of the 443 Greenwich St. Condominium v SGN 443 Greenwich St. Owner LLC*, 2024 NY Slip Op 31662[U], *7 [Sup Ct, NY County 2024] [citations omitted].)

"Speculative and conclusory allegations do not state a claim for constructive fraud under the Debtor and Creditor Law." (*Eagle Eye Collection Corp. v Shariff*, 190 AD3d 600, 601 (1st Dept 2021) [internal quotation marks and citation omitted].) However, constructive fraudulent conveyance claims are not subject to the heightened pleading standard of CPLR 3016(b). (*Stillwater Liquidating LLC v CL Recovery Trading Fund III, L.P.*, 2019 NY Slip Op 33108[U], *10 [Sup Ct, NY County 2019].)

B. DCL § 276 - Actual Fraudulent Conveyance

"Section 276 of the Debtor and Creditor Law, addressing an actual fraudulent conveyance, applies to any 'conveyance made . . . with actual intent . . . to hinder,

651347/2022   GNHC 1703-518, LLC vs. VENARI PARTNERS, LLC ET AL
Motion No. 003 004

Page 7 of 21

[* 7]

delay, or defraud either present or future creditors.'" (*SSC NY Corp. v Computershare Inc.*, 224 AD3d 620, 621 [1st Dept 2024], quoting *Marine Midland Bank v Murkoff*, 120 AD2d 122, 126 [2d Dept 1986].)

> "Debtor and Creditor Law § 276, unlike sections 273 and 275, addresses actual fraud, as opposed to constructive fraud, and does not require proof of unfair consideration or insolvency. Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent. Among such circumstances are: a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; the transferor's knowledge of the creditor's claim and the inability to pay it; and retention of control of the property by the transferor after the conveyance." (*Wall St. Assoc. v Brodsky*, 257 AD2d 526, 529 [1st Dept 1999] [internal quotation marks and citations omitted].)

*Initial or Subsequent Transferees*

The Sweetbriar Defendants contend that plaintiff's claims for actual or constructive fraudulent fail as a matter of law because the Sweetbriar Defendants are neither initial nor subsequent transferees of the relevant conveyance. "DCL claims are only properly asserted against the transferor and transferee." (*Stillwater Liquidating LLC*, 2019 NY Slip Op 33108[U], *12, citing DCL §270.) However,

> "[a] fraudulent conveyance claim seeking to recover money damages can … be maintained against a person who participates in the fraudulent transfer as either the transferee of the assets or the beneficiary of the conveyance. Thus, the transferor of the property - that is, the debtor - is not the proper defendant in a fraudulent conveyance claim. Nor may a claim be brought against parties who merely participated in the transfer but did not benefit from it." (*Amusement Indus., Inc. v Midland Ave. Assoc., LLC,* 820 F Supp 2d 510, 527 [SDNY 2011] [internal quotation marks and citations omitted].)

Under New York law, the Sweetbriar Defendants must be beneficiaries of the fraudulent conveyance and also must have participated in the conveyance. (*Stochastic Decisions,*

651347/2022   GNHC 1703-518, LLC vs. VENARI PARTNERS, LLC ET AL
Motion No.  003 004

Page 8 of 21

*Inc. v DiDomenico*, 995 F2d 1158, 1172 [2d Cir 1993], citing *FDIC v Porco*, 75 NY2d 840, 842 [1990] [stating that "[t]he New York Court of Appeals has made it clear that the pertinent provisions of the New York Debtor and Creditor Law provide a creditor's remedy for money damages against parties *who participate* in the fraudulent transfer of a debtor's property *and* are transferees of the assets and beneficiaries of the conveyance"] [emphasis added].)

Here, plaintiff sufficiently alleges that the Sweetbriar Defendants participated in the alleged fraudulent conveyance scheme by participating in the restructuring deal involving TPF and that the Sweetbriar Defendants were beneficiaries of the alleged fraudulent conveyance between the Nominal Defendants and TPF. (NYSCEF 23, Complaint ¶¶ 25, 26, 51, 73.)

The Sweetbriar Defendants argue that to be beneficiaries they must receive a benefit related directly related to the conveyance. However, even if true, at this pleading stage, the court cannot determine whether the distributions received by the Sweetbriar Defendants are the direct proceeds from the purported fraudulent conveyance. According to plaintiff, after the TPF $8 million financing transaction closed, TPF deposited $3.25 million into Venari's operating account, and six days later Venari transferred $2.7 million to the Sweetbriar Defendants. (NYSCEF 23, Complaint ¶ 56.) Plaintiff's allegations that the Sweetbriar Defendants are initial or subsequent transferees are sufficient.

*Creditor*

Under both applicable sections of the former DCL, plaintiff must establish that it is a creditor of the transferor. (DCL §§ 273, 276; *see also Paragon v Paragon*, 164

651347/2022   GNHC 1703-518, LLC vs. VENARI PARTNERS, LLC ET AL                Page 9 of 21
Motion No. 003 004

9 of 21

AD3d 1460, 1461 [2d Dept 2018] [holding that "[a] threshold question is whether the plaintiff was a 'creditor' of the decedent within the definition of the Act"].) Former DCL § 270 defines creditor as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent."

Here, plaintiff relies on an alter ego theory to support its claims as a creditor under the former DCL. Specifically, plaintiff alleges that, as a creditor of the Nominal Defendants, it is also a creditor of Venari because Venari is an alter ego of the Nominal Defendants. (NYSCEF 23, Complaint ¶ 94.) Plaintiff asserts that the Nominal Defendants lack a separate identity from Venari, and thus, Venari should ultimately be liable for the Nominal Defendants' acts.

> "[I]t is well settled that those seeking to pierce a corporate veil . . . bear a heavy burden of showing that the corporation was dominated as to the transaction attacked and that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences. Piercing the corporate veil generally requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury. ... [E]vidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance." (*Sheridan Broadcasting Corp. v Small*, 19 AD3d 331, 332 [1st Dept 2005] [internal quotation marks and citations omitted].)

"An inference of abuse does not arise ... where a corporation was formed for legal purposes or is engaged in legitimate business." (*TNS Holdings Inc. v MKI Sec. Corp.*, 92 NY2d 335, 339-340 [1998].) However, where the creation of the entity was to specifically harm the plaintiff, the mere fact that the entity operates as a legitimate business should does not relieve the alter ego from liability. (*Tap Holdings, LLC v Orix Fin. Corp.*, 109 AD3d 167, 175 [1st Dept 2013].)

651347/2022   GNHC 1703-518, LLC vs. VENARI PARTNERS, LLC ET AL
Motion No.  003 004

Page 10 of 21

10 of 21

"Indicia of a situation warranting veil-piercing include: (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own." (*Shisgal v Brown*, 21 AD3d 845, 848 [1st Dept 2005] [internal quotation marks and citation omitted].)

Here, plaintiff alleges that Venari and the Nominal Defendants were not operated as distinct and separate entities. (NYSCEF 23, Complaint ¶¶ 8, 41.) Venari operated the Nominal Defendants without any regard to corporate form. Specifically, plaintiff alleges that Mininno and Blaschak gave conflicting testimony as to whether Venari was, in fact, the Nominal Defendants' managing member and could not clearly define what roles each of them fulfilled with the Nominal Defendants in terms of corporate governance. (*Id.* ¶ 42 [a-b].) The Funding Agreement also identifies Venari's address as that for the NHCA Nominal Defendants. (*Id.* ¶ 38.) Mininno also testified that the Nominal Defendants did not maintain their own bank accounts. (*Id.* ¶ 42 [c].) Plaintiff alleges that when the Nominal Defendants assigned and pledged their interests in the GBE Cases to TPF, TPF deposited $3.25 million directly into Venari's operating account, not an account belonging to the Nominal Defendants. (*Id.* ¶ 56.) Plaintiff asserts that the Nominal Defendants' assets were their interest in the GBE Actions, so once sold to TPF, and proceeds of that sale going to Venari, the Nominal

651347/2022   GNHC 1703-518, LLC vs. VENARI PARTNERS, LLC ET AL
Motion No.  003 004

Page 11 of 21

[* 11]

Defendants had inadequate capitalization. Mininno also could not identify the Nominal Defendants' liabilities, stating that Venari, not the Nominal Defendants, paid the Nominal Defendants' vendor bill. (*Id.* ¶ 43[b].) Thus, plaintiff alleges sufficient facts that, if proved, indicate that Venari exercised complete domination of the Nominal Defendants.

Plaintiff also sufficiently alleges that that such domination was used to commit a fraud or wrong against the plaintiff which resulted in injury. Essentially, plaintiff alleges that Venari caused the funds owed to the Nominal Defendant to be diverted to Venari to circumvent payment of the funds owed to plaintiff. (*Id.* ¶¶ 50, 56.)

Accordingly, plaintiff adequately pleads that it is a creditor of Venari under a piercing the corporate veil theory.

*Insolvency – DCL § 273*

Insolvency of debtor is required in finding constructive fraud pursuant to DCL § 273. This case presents a unique situation in that the true debtors are the Nominal Defendants, but they did not make the alleged fraudulent conveyance. Rather, it was Venari that transferred the funds at issue to the Sweetbriar Defendants. However, as stated above, plaintiff has plead sufficient allegations to advance its theory that Venari is the alter ego of the Nominal Defendants. Thus, Venari and the Nominal Defendants will be treated as one for the purposes of plaintiff's fraudulent conveyance claim. (*See Holme v Global Mins. & Metals Corp.*, 63 AD3d 417, 418 [1st Dept 2009].) As the debtors, it is the insolvency of the Nominal Defendants that is at issue, and plaintiff

651347/2022   GNHC 1703-518, LLC vs. VENARI PARTNERS, LLC ET AL
Motion No.  003 004

Page 12 of 21

sufficiently alleges that Venari's transfer of the funds to the Sweetbriar Defendants rendered the Nominal Defendants insolvent.  (NYSCEF 23, Complaint ¶¶ 49, 56.)

*Fair Consideration – DCL § 273*

> "Fair consideration is given for property when in exchange for such property, … as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied.  It is well settled that an evaluation of whether fair consideration is given for property under Debtor and Creditor Law § 272 must be determined upon the facts and circumstances of each particular case." (*Commodity Futures Trading Commn. v Walsh*, 17 NY3d 162, 175 [2011] [internal quotation marks and citations omitted].)

Plaintiff alleges that Venari and the Sweetbriar Defendants worked on the TPF transaction together with the understanding that this alternative structuring would provide a way to circumvent the restrictions on the GBE Actions allowing the Sweetbriar Defendants to receive their return over plaintiff; additionally, plaintiff alleges that the Sweetbriar Defendants even took a fee for its role in structuring the transaction. (NYSCEF 23, Complaint ¶¶ 25, 49-51.)  This is enough to sufficiently plead a lack of fair consideration in the transfers of the funds from Venari to the Sweetbriar Defendants.

*DCL § 276 – Actual Fraud*

DCL § 276 does not require proof of unfair consideration or insolvency.  (*Wall St. Assoc.*, 257 AD2d at 529.)  Since proving actual intent is difficult, a plaintiff may rely on badges of fraud in stating its claim.  (*Id.*)  Circumstances to examine are: "a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; the transferor's knowledge of the creditor's claim and the inability to pay it; and retention of control of the property by the transferor after the conveyance." (*Id.*)

651347/2022   GNHC 1703-518, LLC vs. VENARI PARTNERS, LLC ET AL          Page 13 of 21
Motion No.  003 004

13 of 21

Here, plaintiff alleges a close relationship between Venari and the Sweetbriar Defendants, a scheme between those parties to ensure the Sweetbriar Defendants received a return of their money over other creditors, and Venari's knowledge of the Funding Agreement and the monies owed pursuant to it. (NYSCEF 23, Complaint ¶¶ 13, 23-26, 38, 49-51.) These allegations are sufficient to survive a motion to dismiss.

Accordingly, the Sweetbriar Defendants' motion to dismiss is denied.

Mot. Seq. No. 004

In mot. seq. no. 004, the Venari Defendants move pursuant to CPLR 7503 (a) to compel arbitration and stay or dismiss this action and enjoin plaintiff from pursuing the New Jersey Action. The Venari Defendants are admittedly not parties to the Funding Agreement which contains the arbitration clause in question[6] (Arbitration Clause). (NYSCEF 61, Venari Defendants' MOL at 7.) Nevertheless, the Venari Defendants imply that they are signatories to the Funding Agreement because Venari and Mininno are on the "signature blocks of the relevant component agreements of the Funding Agreement" and plaintiff "included in the Funding Agreement a series of Managing Member certificates executed by Venari Partners and Mr. Mininno." (*Id.*)

The Venari Defendants also argue that they can invoke the Arbitration Clause on theories of agency, alter ego, or third-party beneficiaries. They further contend that plaintiff's claims against them are arbitrable under the broad Arbitration Clause and the

---

[6] Section 8 of the Funding Agreement provides, "[e]xcept as it relates to the F.A.A., the Investment Documents, and any related claims, shall be governed by and construed in accordance with the laws of the State of New York, without regard to any conflict of laws provisions thereof. Any dispute arising out of, or relating to, the Investment Documents, including this provision to arbitrate, shall be settled by binding arbitration in the Judicial Arbitration and Mediation Service ('JAMS') office in New York, NY." (NYSCEF 69, Funding Agreement at 3-4.)

651347/2022   GNHC 1703-518, LLC vs. VENARI PARTNERS, LLC ET AL
Motion No.  003 004

Page 14 of 21

[* 14]

issue of whether a claim is arbitrable shall be determined by an arbitral tribunal and not the court.

On the contrary, plaintiff contends that the Venari Defendants are not parties to the Funding Agreement and the claims pursued against them are noncontractual and do not arise from the Funding Agreement. Plaintiff further contends that the theories of agency, alter ego, and third-party beneficiaries as a basis to invoke the Arbitration Clause are inapplicable to this dispute.

> "[O]n a motion to compel or stay arbitration, a court must determine, in the first instance . . . whether parties have agreed to submit their disputes to arbitration and, if so, whether the disputes generally come within the scope of their arbitration agreement. When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." (*Revis v Schwartz*, 192 AD3d 127, 134 [2d Dept 2020] [internal quotation marks and citations omitted].)

"Notwithstanding the public policy favoring arbitration, nonsignatories are generally not subject to arbitration agreements." (*Matter of Belzberg v Verus Invs. Holdings Inc.*, 21 NY3d 626, 630 [2013] [internal quotation and citation omitted].) However, "[a] nonsignatory may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency." (*Jefferies & Co. v Infinity Equities I, LLC*, 66 AD3d 540, 541 [1st Dept 2009] [citation omitted]; see also *TNS Holdings Inc.*, 92 NY2d at 339 [recognizing "in certain limited circumstances the need to impute the intent to arbitrate to a nonsignatory"] [internal citation omitted].) "The issue of whether a party is bound by an arbitration provision in an agreement it did not execute is a threshold issue for the court, not the arbitrator, to decide." (M*atter of 215-219 W. 28th St. Mazal Owner LLC v Citiscape Bldrs. Group Inc.*, 177 AD3d 482, 483 [1st Dept 2019] [citation omitted].)

651347/2022   GNHC 1703-518, LLC vs. VENARI PARTNERS, LLC ET AL
Motion No.  003 004

Page 15 of 21

At the outset, the court rejects the Venari Defendants unsupported contention that they are signatories to the Funding Agreement because Venari and Mininno are on the signature blocks of the Funding Agreement. The signature page of the Funding Agreement shows that Mininno signed the Funding Agreement as the "authorized signatory" for the NHCA Nominal Defendants. (NYSCEF 63, Funding Agreement at GNH0000005.) It is evident that he signed on behalf of the NHCA Nominal Defendants, and not on his behalf or the behalf of Venari.

However, nonsignatories like the Venari Defendants can invoke an arbitration clause under certain limited theories, including equitable estoppel, alter ego/piercing the corporate veil, third-party beneficiaries, agency. (*See Matter of Rural Media Group, Inc. v Yraola*, 137 AD3d 489, 490 [1st Dept 2016]; *TNS Holdings*, 92 NY2d at 339; *Jefferies & Co.*, 66 AD3d at 541.)

*Agency*

"[A]gents have been afforded 'the benefit of arbitration agreements entered into by their principals to the extent that the misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation.'" (3*32 E. 66th St., Inc. v Walker*, 59 Misc 3d 1216[A], 2018 NY Slip Op 50584[U], *5 [Sup Ct, NY County 2018], quoting *Hirschfeld Prods. v Mirvish*, 88 NY2d 1054, 1056 [1996].)

Here, plaintiff's claims against the Venari Defendants are based on their purported abuse of Venari's role as the sole member of the Nominal Defendants and their role as transferees of an actual or constructive fraudulent conveyance. None of the claims arise from actions undertaken by the Venari Defendants in their role as

651347/2022   GNHC 1703-518, LLC vs. VENARI PARTNERS, LLC ET AL
Motion No.  003 004

Page 16 of 21

16 of 21

[* 16]

agents of the signatories (NHCA Nominal Defendants).[7]  The Venari Defendants reliance on *Hirschfeld* is unavailing, as unlike this action, the plaintiff's complaint in *Hirschfeld* was directed to nonsignatories' misconduct in performing their duties as agents of the signatory.  This distinction is significant because the courts have consistently afforded agents the benefit of arbitration agreements entered into by their principals only to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation.

*Estoppel*

The Venari Defendants rely on multiple theories of estoppel to invoke the Arbitration Clause.  The Venari Defendants assert that the doctrine of relatedness estoppel allows them to invoke the arbitration clause in such a case where the issues the nonsignatory party is seeking to resolve in arbitration were intertwined with the agreement that the estopped party signed.  The Venari Defendants further assert that plaintiff is estopped from denying them the benefit of invoking the Arbitration Clause when in its complaint, the plaintiff alleges that Venari Partners, under the control of Mininno and Min-Fam, functioned as an alter ego for the Nominal Defendants.[8]

A. Relatedness Estoppel

> "Under principles of estoppel, a non-signatory to an arbitration agreement
> may compel a signatory to arbitrate a dispute where the relationship
> between the parties, the contracts they signed and the issues raised
> among them demonstrates that the issues that the non-signatory is

---

[7] While Minnino did sign the Funding Agreement as the authorized signatory of the NHCA Nominal Defendants, the allegations against him in this action do not derive from his role as an agent of the NHCA Nominal Defendants.

[8] In their moving brief, the Venari Defendants rely on an alter-ego estoppel theory to invoke the Arbitration Clause.  However, in their reply brief, the Venari Defendants appear to rely on the alter-ego exception (citing *TNS Holdings Inc.*, 92 NY2d at 339) to invoke the Arbitration Clause.

651347/2022  GNHC 1703-518, LLC vs. VENARI PARTNERS, LLC ET AL
Motion No.  003 004

Page 17 of 21

seeking to resolve in arbitration are intertwined with the agreement … . Furthermore, the relationship between the parties must indicate that the signatory either intended the agreement to apply to the non-signatory or that it would be inequitable for the signatory to refuse to arbitrate on the ground that it did not have an agreement to arbitrate with the non-signatory." (*Fuller v Uber Tech. Inc.,* 2020 NY Slip Op 33188[U], *3-4 [Sup Ct, NY County 2020] [citation omitted].)

Thus, the court must evaluate the relationship between the parties, contract, and matters at issue in the lawsuit as compared to those covered by the Arbitration Clause.

Plaintiff brings two distinct causes of action in this action against the Venari Defendants: recovery of arbitral award on an alter ego theory and actual or constructive fraudulent conveyance. The Venari Defendants cannot rely on the relatedness estoppel doctrine to invoke the Arbitration Clause. The claims pursued against them in this action are distinct from the claims brought against the Nominal Defendants in the arbitration and are not so intertwined to warrant the invocation of the relatedness estoppel. The arbitration dealt with plaintiff's breach of contract claims against the Nominal Defendants. The claims in this action against the Venari Defendants either seek to hold Venari liable for the Arbitral Award or seek to recover the value of a purported fraudulent conveyance. While some of the claims may have the same factual genesis (the transfer of the GBE Interest to TPF), the legal basis, issues, and the parties are different. Plaintiff's claims against the Venari Defendants in this action are founded in a New York statute, rather than the Funding Agreement. (*See Denney v Jenkens & Gilchrist*, 412 F Supp 2d 293, 299 [SD NY 2005] [denying a motion to compel arbitration because the plaintiff's claims were not "intimately founded in or intertwined" with the agreement containing the arbitration clause and the plaintiff could "allege the same causes of action" were the agreements void].)

651347/2022   GNHC 1703-518, LLC vs. VENARI PARTNERS, LLC ET AL
Motion No.  003 004

Page 18 of 21

[* 18]

B. Third-Party Beneficiaries/Direct Benefits Estoppel

"A nonsignatory to an agreement containing an arbitration clause that has knowingly received direct benefits under the agreement will be equitably estopped from avoiding the agreement's obligation to arbitrate." (*HRH Constr. LLC v Metropolitan Transp. Auth.*, 33 AD3d 568, 569 [1st Dept 2006] [citation omitted].) The direct benefits estoppel theory can only be invoked when the non-signatory "receives benefits flowing directly from the agreement." (*Matter of Belzberg v Verus Invs. Holdings Inc.*, 21 NY3d 626, 631 [2013] [citation omitted].) "Where the benefits are merely indirect, a nonsignatory cannot be compelled to arbitrate a claim. A benefit is indirect where the nonsignatory exploits the contractual relation of the parties, but not the agreement itself." (*Id.* [citation omitted].) "A third-party beneficiary exists only if the parties to that contract intended to confer a benefit on him when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to him." (*Bowery Presents LLC v Pires*, 2013 NY Slip Op 31361[U], *9 [Sup Ct, NY County 2013] [internal quotation marks and citations omitted].)

The Venari Defendants direct the court to paragraph 1 of the complaint where the plaintiff alleges that it agreed "to provide that litigation financing pursuant to a written contract that was executed with or for the benefit of Defendants" to support their argument that they were the intended beneficiaries of the Funding Agreement. (*See* NYSCEF 23, Complaint ¶ 1.) However, plaintiff claims that the inclusion of that language was a typographical error.[9] Plaintiff's characterization, whether deliberate or

---

[9] Plaintiff has not filed a motion to amend its pleadings to correct this typographical error.

**651347/2022 GNHC 1703-518, LLC vs. VENARI PARTNERS, LLC ET AL** Page 19 of 21
**Motion No. 003 004**

made in error, does not change the plain language of the Funding Agreement. By its own terms, the purpose of the Funding Agreement was to "to provide funding to Seller [NHCA Nominal Defendants] for payment to Law Firm of the Law Firm Payments and to provide Buyer [plaintiff] the opportunity to participate in the Litigation Proceeds." (NYSCEF 63, Funding Agreement at GNHC000001.) The Funding Agreement did not provide the Venari Defendants with a direct benefit, and thus, they cannot rely on the direct benefits estoppel theory to invoke the Arbitration Clause.

*Alter-Ego/Piercing the Corporate Veil*

A party seeking to compel arbitration pursuant to the alter ego exception bears a heavy burden to demonstrate that the corporation was dominated and such domination was the instrument of fraud or led to malfeasance. (*See Matter of Rural Media Group, Inc. v Yraola*, 137 AD3d 489, 490-491 [1st Dept 2016] [holding that "Respondent bears a heavy burden with respect to each of these theories, and [i]nterrelatedness, standing alone, is not enough to subject a nonsignatory to arbitration"] [internal quotation marks and citation omitted].)

Here, the Venari Defendants rely on plaintiff's own allegations that Venari, under the control and domination of Mininno and Min-Fam functioned as an alter ego for the NHCA Nominal Defendants to contend that the alter-ego exception provides a basis for compelling arbitration, while also denying those allegations. It is the Venari Defendants' burden to support its theory and they cannot deny being an alter ego and still claim the benefit of the alter-ego exception to compel arbitration pursuant to the Arbitration Clause agreed to by the NHCA Nominal Defendants. The Venari Defendants cannot

651347/2022   GNHC 1703-518, LLC vs. VENARI PARTNERS, LLC ET AL                    Page 20 of 21
Motion No.  003 004

20 of 21

outsource this burden to the plaintiff and merely rely on plaintiff's allegations of alter ego.

*Arbitrability of the Claims against Venari Defendants*

The court will not examine whether the claims against the Venari Defendants in this action are arbitrable since the court has concluded that the Venari Defendants are not parties to the Arbitration Clause and cannot invoke the Arbitration Clause.

The court has considered all other arguments and they do not warrant a different result.

Accordingly, it is,

ORDERED that mot. seq. no. 003 is denied; and it is further

ORDERED that mot. seq. no. 004 is denied; and it is further

ORDERED that movant defendants shall answer the complaint by July 25, 2024.

| 7/11/2024 | | | | |
|-----------|--|--|--|--|
| **DATE** | | | **ANDREA MASLEY, J.S.C.** | |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|------------|--|---------------|---|----------------------|--|
| | | GRANTED | X DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

651347/2022   GNHC 1703-518, LLC vs. VENARI PARTNERS, LLC ET AL
Motion No.  003 004

Page 21 of 21