Midson v Meeting House Lane Med. Practice, P.C. (2024 NY Slip Op 04261)

Midson v Meeting House Lane Med. Practice, P.C.

2024 NY Slip Op 04261

Decided on August 21, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 21, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
CHERYL E. CHAMBERS
PAUL WOOTEN
LILLIAN WAN, JJ.

2019-10058
2019-10059
2019-11596
 (Index No. 61705/14)

[*1]Caroline Midson, et al., appellants, 
v
Meeting House Lane Medical Practice, P.C., et al., defendants, Southampton Hospital, et al., respondents.

The Jacob D. Fuchsberg Law Firm, LLP (The Altman Law Firm, PLLC, Woodmere, NY [Michael J. Altman], of counsel), for appellants.
Barbiero Bisch & O'Connor LLP, Melville, NY (Joseph O'Connor of counsel), for respondent Southampton Hospital.
Gabriele & Marano, LLP, Garden City, NY (Melissa Goldberg of counsel), for respondent Kenneth R. Dodge.
Wagner, Doman, Leto & Di Leo, P.C., Mineola, NY (David B. De Siver of counsel), for respondent Anthony F. Knott.

DECISION & ORDER
In a consolidated action to recover damages for medical malpractice, etc., the plaintiffs appeal from (1) a judgment of the Supreme Court, Suffolk County (Sanford Neil Berland, J.), entered July 2, 2019, (2) a judgment of the same court entered August 5, 2019, and (3) a judgment of the same court entered September 11, 2019. The judgment entered July 2, 2019, upon so much of an order of the same court dated June 25, 2019, as granted that branch of the motion of the defendant Kenneth R. Dodge which was for summary judgment dismissing the complaint insofar as asserted against him, is in favor of that defendant and against the plaintiffs dismissing the complaint insofar as asserted against that defendant. The judgment entered August 5, 2019, upon so much of the order dated June 25, 2019, as granted the motion of the defendant Anthony F. Knott for summary judgment dismissing the complaint insofar as asserted against him, is in favor of that defendant and against the plaintiffs dismissing the complaint insofar as asserted against that defendant. The judgment entered September 11, 2019, insofar as appealed from, upon so much of the order dated June 25, 2019, as granted that branch of the motion of the defendant Southampton Hospital which was for summary judgment dismissing the complaint insofar as asserted against it, is in favor of that defendant and against the plaintiffs dismissing the complaint insofar as asserted against that defendant.
ORDERED that the judgment entered July 2, 2019, is affirmed; and it is further,
ORDERED that the judgment entered August 5, 2019, is affirmed, and it is further,
ORDERED that the judgment entered September 11, 2019, is modified, on the law, by deleting the provision thereof dismissing the cause of action alleging vicarious liability insofar as asserted against the defendant Southampton Hospital based upon the alleged medical malpractice committed by the defendants Joanna Pemberton and Meeting House Lane Medical Practice, P.C.; as so modified, the judgment dated September 11, 2019, is affirmed insofar as appealed from, that branch of the motion of the defendant Southampton Hospital which was for summary judgment dismissing the cause of action alleging vicarious liability insofar as asserted against it based upon the alleged medical malpractice committed by the defendants Joanna Pemberton and Meeting House Lane Medical Practice, P.C., is denied, the cause of action alleging vicarious liability insofar as asserted against the defendant Southampton Hospital based upon the alleged medical malpractice committed by the defendants Joanna Pemberton and Meeting House Lane Medical Practice, P.C., is reinstated, and the order dated June 25, 2019, is modified accordingly; and it is further,
ORDERED that one bill of costs is awarded to the plaintiffs, payable by the defendant Southampton Hospital, and one bill of costs is awarded to the defendants Kenneth R. Dodge and Anthony F. Knott, payable by the plaintiffs.
On December 27, 2012, the plaintiff Caroline Midson (hereinafter the injured plaintiff) went to the defendant Meeting House Lane Medical Practice, P.C. (hereinafter Meeting House), complaining of stomach problems and was evaluated by the defendant Kenneth R. Dodge, a physician's assistant, who asked the defendant Joanna Pemberton, a licensed practical nurse, to draw blood from the injured plaintiff. It is alleged that, as a result of Pemberton's medical malpractice in performing that procedure, the injured plaintiff suffered an injury to the median nerve of her left arm.
Subsequently, on January 3, 2013, the injured plaintiff was evaluated by Dodge, who sent her to the emergency room of the defendant Southampton Hospital (hereinafter the hospital) for treatment of her arm. There, the defendant Justin R. Zack, a radiologist, diagnosed the injured plaintiff with a venous thrombosis. The injured plaintiff was prescribed anticoagulants. On January 4, 2013, the defendant Anthony F. Knott, a physician who worked for Meeting House and who had privileges at the hospital, became the injured plaintiff's attending physician and discharged her.
On January 8, 2013, the injured plaintiff was evaluated by a vascular surgeon who informed her that she did not have a venous thrombosis and directed her to cease taking anticoagulants. The injured plaintiff returned to Meeting House on January 11, 2013, where she was evaluated by Knott and was properly diagnosed with neuropathy.
The injured plaintiff, and her husband suing derivatively, commenced the instant action, inter alia, to recover damages for medical malpractice. A bill of particulars dated September 15, 2014, alleged that the hospital's "employees, agents, contractors, subcontractors, corporate divisions, wholly owned subsidiary corporations, wholly owned subsidiary business entities and/or alter ego business entities . . . failed to properly perform a blood draw" and then misdiagnosed the injured plaintiff's condition. An amended bill of particulars dated October 10, 2014, alleged that the hospital committed malpractice from December 27, 2012, until January 13, 2013, and that some instances of the alleged medical malpractice occurred on the premises of "corporate divisions, wholly owned subsidiary corporations, wholly owned subsidiary business entities and/or alter ego business entities."
After issue was joined, and following the completion of discovery, Dodge and the hospital separately moved, inter alia, for summary judgment dismissing the complaint insofar as asserted against each of them, and Knott separately moved for summary judgment dismissing the complaint insofar as asserted against him. In an order dated June 25, 2019, the Supreme Court, among other things, granted those defendants' separate motions on the grounds that Dodge and Knott did not participate in the alleged medical malpractice committed by Pemberton, that the plaintiffs failed to raise a triable issue of fact as to whether Dodge or Knott negligently hired, trained, or supervised Pemberton, that the hospital's alleged misdiagnosis of a venous thrombosis was not a proximate cause of the injured plaintiff's injuries, and that the contention that the hospital was [*2]vicariously liable for the negligence of Pemberton and Meeting House under the "corporate alter ego" doctrine was not pleaded in the complaint and was, therefore, waived. The court, upon so much of the order dated June 25, 2019, as granted Knott's motion for summary judgment dismissing the complaint insofar as asserted against him and those branches of the separate motions of Dodge and the hospital which were for summary judgment dismissing the complaint insofar as asserted against each of them, entered separate judgments in favor of each of those defendants and against the plaintiffs dismissing the complaint insofar as asserted against each of those defendants. The plaintiffs appeal.
The essential elements of medical malpractice are (1) a departure from accepted medical practice and (2) evidence that such departure was a proximate cause of the injury (see Mendoza v Maimonides Med. Ctr., 203 AD3d 715). "On a motion for summary judgment dismissing a cause of action alleging medical malpractice, the defendant bears the initial burden of establishing that there was no departure from good and accepted medical practice or that any alleged departure did not proximately cause the plaintiff's injuries" (Carradice v Jamaica Hosp. Med. Ctr., 198 AD3d 863, 864). Where a defendant makes a prima facie showing on both elements, "the burden shifts to the plaintiff to rebut the defendant's showing by raising a triable issue of fact as to both the departure element and the causation element" (Stukas v Streiter, 83 AD3d 18, 25). While summary judgment is not appropriate "where the parties adduce conflicting medical expert opinions" (Feinberg v Feit, 23 AD3d 517, 519), "[g]eneral and conclusory allegations of medical malpractice . . . unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient" (Myers v Ferrara, 56 AD3d 78, 84; see Mendoza v Maimonides Med. Ctr., 203 AD3d 715). "In order not to be considered speculative or conclusory, expert opinions in opposition should address specific assertions made by the movant's experts, setting forth an explanation of the reasoning and relying on specifically cited evidence in the record" (Tsitrin v New York Community Hosp., 154 AD3d 994, 996 [internal quotation marks omitted]).
Knott established his prima facie entitlement to judgment as a matter of law by submitting a transcript of his deposition testimony and an affirmation of his expert, George Fisher. Knott was not involved in the hiring, training, or firing of Pemberton, and although he had some supervisory role as a physician when he was present at Meeting House, he was not present on December 27, 2012, when the blood draw occurred. Neither Knott nor Dodge had a supervisory role over the practice at Meeting House or any obligation to document training. Rather, it was the practice administrator who hired, fired, and evaluated clinical staff, such as Pemberton. Further, there was no indication prior to the blood draw that Pemberton was incapable of performing blood draws, and there were no prior complaints relating thereto. Knott only became the injured plaintiff's attending physician on January 4, 2013, the injured plaintiff's second day in the hospital, and it was appropriate for Knott to rely on Zack's diagnosis. According to Fisher, Knott was not responsible for the injured plaintiff's care until Knott's arrival at the hospital on January 4, 2013, and anticoagulant therapy had been started prior to his arrival. In Fisher's opinion, to a reasonable degree of medical certainty, Knott did not depart from accepted medical practice and did not proximately cause the injuries alleged, since he was not responsible for Pemberton's negligence and he was not responsible for training Pemberton.
Similar considerations apply to Dodge, who did not train Pemberton. Dodge's expert stated that Dodge was not required to be present during the blood draw, and there is no evidence in this record that nurses drawing blood have to be directly supervised by a medical provider in the same room.
Accordingly, Knott and Dodge separately established their prima facie entitlement to judgment as a matter of law dismissing the complaint insofar as asserted against each of them. In opposition to Knott's and to Dodge's prima facie showing, the plaintiffs failed to raise a triable issue of fact.
The plaintiffs seek to hold the hospital liable based upon its treatment of the injured plaintiff in January 2013, including the alleged misdiagnosis of a venous thrombosis, and upon a theory of vicarious liability for the alleged medical malpractice committed by Pemberton and [*3]Meeting House. The hospital's experts asserted that the hospital's treatment of the injured plaintiff in January 2013 was not a proximate cause of her injuries, and the plaintiffs' experts' opinions to the contrary were conclusory.
The Supreme Court declined to consider the plaintiffs' contention that the hospital was vicariously liable for the alleged medical malpractice committed by Pemberton and Meeting House on the ground that the theory of vicarious liability was not pleaded in the complaint. However, the theory of vicarious liability was alleged in the bill of particulars, which asserted that the hospital was liable for the medical malpractice committed by "alter ego business entities," and in the amended bill of particulars, which asserted that some instances of medical malpractice were committed on the premises of "alter ego business entities," and was explored at length during discovery (cf. Americore Drilling & Cutting v EMB Contr. Corp., 198 AD3d 941, 946). Therefore, the theory of vicarious liability should have been considered by the court (see Kauffman v Turner Constr. Co., 195 AD3d 1003). There are no special pleading requirements for piercing the corporate veil (see CPLR 3016; F & R Goldfish Corp v Furleiter, 210 AD3d 643; Olivieri Constr. Corp. v WN Weaver St., LLC, 144 AD3d 765, 767). Further, "[a]n argument to pierce the corporate veil is not a cause of action in itself" (Cortlandt St. Recovery Corp. v Bonderman, 31 NY3d 30, 50).
"Because a decision whether to pierce the corporate veil in a given instance will necessarily depend on the attendant facts and equities, the New York cases may not be reduced to definitive rules governing the varying circumstances when the power may be exercised. Generally, however, piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury" (Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135, 141). "'[T]he corporate veil will be pierced to achieve equity, even absent fraud, when a corporation has been so dominated by an individual or another corporation and its separate entity so ignored that it primarily transacts the dominator's business instead of its own and can be called the other's alter ego'" (Olivieri Constr. Corp. v WN Weaver St., LLC, 144 AD3d at 767, quoting William Lovell Safety Mgt. Co., LLC, 71 AD3d 671, 672; see Rosenshein v Kushner, 212 AD3d 744, 745). In determining whether to pierce the corporate veil, "[g]enerally considered are such factors as whether there is an overlap in ownership, officers, directors and personnel, inadequate capitalization, a commingling of assets, or an absence of separate paraphernalia that are part of the corporate form, such that one of the corporations is a mere instrumentality, agent and alter ego of the other" (Matter of Island Seafood Co. v Golub Corp., 303 AD2d 892, 893-894 [citation omitted]; see Last Time Beverage Corp. v F & V Distrib. Co., LLC, 98 AD3d 947).
Here, Meeting House failed to adhere to corporate formalities, such as holding board of directors' meetings. Meeting House was owned and controlled by an employee of the hospital, whose office was in the hospital, pursuant to a contract with the hospital. The hospital had sole discretion over the number of shares and who would be the shareholders. Meeting House was also undercapitalized, since it appears that its assets consisted of a non-interest-bearing loan from the hospital (see Last Time Beverage Corp. v F & V Distrib. Co., LLC, 98 AD3d at 951). Its budget and any amendments thereto had to be approved by the hospital. The common ownership, leadership, and control, and the common location on the grounds of the hospital and in the hospital itself, raised a triable issue of fact as to whether the corporate veil should be pierced (see Cherkasets v Gordon, 21 AD3d 856).
The parties' remaining contentions either are without merit or need not be addressed in light of our determination.
Accordingly, the Supreme Court properly granted that branch of Dodge's motion which was for summary judgment dismissing the complaint insofar as asserted against him and Knott's separate motion for summary judgment dismissing the complaint insofar as asserted against him. However, the court should have denied that branch of the hospital's motion which was for summary judgment dismissing the cause of action alleging vicarious liability insofar as asserted against it based upon the alleged medical malpractice committed by Pemberton and Meeting House.
BARROS, J.P., CHAMBERS, WOOTEN and WAN, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court